Case No. 25-2065

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SAMUEL ALEXANDER KUHL,

Defendant-Appellant.

---

Appeal from the United States District Court for the Western District of Michigan, Southern Division
Case No. 23-cr-44
Honorable Jane M. Beckering, United States District Judge

---

**BRIEF OF DEFENDANT-APPELLANT**
**SAMUEL ALEXANDER KUHL**

**SANFORD A. SCHULMAN**
Attorney for Defendant-Appellant
SAMUEL ALEXANDER KUHL
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
313-963-4740
Email: saschulman@comcast.net

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

REQUEST FOR ORAL ARGUMENT .......... v

JURISDICTIONAL STATEMENT .......... v

ISSUES PRESENTED FOR REVIEW .......... vi

STATEMENT OF THE CASE .......... xi

STATEMENT OF FACTS .......... 1

SUMMARY OF THE ARGUMENT .......... 24

ARGUMENT .......... 30

I. THE TRIAL COURT ERRED IN PERMITTING MR. KUHL TO CONTINUE REPRESENTING HIMSELF WHERE HIS SELF-REPRESENTATION WAS MANIFESTLY INEFFECTIVE UNDER INDIANA V. EDWARDS .......... 30

II. THE DISTRICT COURT ERRED IN DENYING THE MOTION TO SUPPRESS WHERE THE GOVERNMENT'S SEARCH AND SEIZURE OF EVIDENCE DERIVED FROM A PRIOR EXPIRED WARRANT .......... 31

III. THE DISTRICT COURT FAILED TO CONDUCT AN ADEQUATE FARETTA COLLOQUY AND DENIED MR. KUHL THE ABILITY TO MEANINGFULLY EXERCISE HIS RIGHT TO SELF-REPRESENTATION .......... 34

IV. THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION UNDER 18 U.S.C. § 2251(a) WHERE THE VISUAL DEPICTIONS WERE SELF-PRODUCED BY THE MINOR WITHOUT DEFENDANT'S DIRECTION ........ 38

V. THE DISTRICT COURT'S CONDUCT PIERCED THE VEIL OF JUDICIAL IMPARTIALITY AND DEPRIVED MR. KUHL OF A FAIR TRIAL ........ 40

VI. 18 U.S.C. § 2251(a) IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD IN VIOLATION OF THE FIRST AND FIFTH AMENDMENTS ........ 43

VII. 18 U.S.C. § 2422(b) IS UNCONSTITUTIONALLY VAGUE IN VIOLATION OF THE FIFTH AMENDMENT ........ 45

VIII. THE FEDERAL PROSECUTION VIOLATED PRINCIPLES OF FEDERALISM, COMITY, AND THE TENTH AMENDMENT ........ 46

IX. THE DISTRICT COURT'S FAILURE TO RESET THE PRETRIAL MOTION DEADLINE DEPRIVED MR. KUHL OF DUE PROCESS ........ 48

X. ALL EVIDENCE USED TO OBTAIN THE FEDERAL INDICTMENT SHOULD HAVE BEEN SUPPRESSED ........ 51

CONCLUSION ........ 55

CERTIFICATE OF COMPLIANCE ........

CERTIFICATE OF SERVICE ........

ADDENDUM: Index to Addenda and Relevant District Court Documents ........

## TABLE OF AUTHORITIES

### Cases

Ballard v. United States, 329 U.S. 187, 67 S. Ct. 261, 265 (1946) .......................... vi

Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988)......................... viii

Bond v. United States, 564 U.S. 211 (2011) .............................................................x

Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951) ........................... viii

Brady v. Maryland, 373 U.S. 83 (1963)................................................19, 20, 21, 24

Costello v. United States, 350 U.S. 359, 363 (1956) ........................................... viii

Crane v. Kentucky, 476 U.S. 683 (1986) ..................................................................48

Duncan v. Walker, 533 U.S. 167 (2001) ................................................................ viii

Estelle v. Williams, 425 U.S. 501 (1976)...................................................................30

Faretta v. California, 422 U.S. 806 (1975).......................................................passim

Franks v. Delaware, 438 U.S. 154 (1978)..................................................................33

Godinez v. Moran, 509 U.S. 389 (1993)....................................................................31

Grayned v. City of Rockford, 408 U.S. 104 (1972)...................................................45

Hopson v. Gray, No. citation (W.D. Mich.) ..............................................................16

Horton v. California, 496 U.S. 128 (1990) ...............................................................53

Indiana v. Edwards, 554 U.S. 164 (2008) ................................................... vi, 25, 30

Jackson v. Virginia, 443 U.S. 307 (1979) ......................................................... viii, 38

Kolender v. Lawson, 461 U.S. 352 (1983) ................................................................43

Kyles v. Whitley, 514 U.S. 419 (1995) .......................................................................vi

Liteky v. United States, 510 U.S. 540 (1994) .................................................. viii, 40

Mapp v. Ohio, 367 U.S. 643 (1961)...........................................................................31

McKaskle v. Wiggins, 465 U.S. 168 (1984) ............................................... vii, 17, 38

New York v. Ferber, 458 U.S. 747 (1982) .................................................................44

Rodriguez v. United States, 575 U.S. 348 (2015)......................................................51

Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920) ............................32

Solem v. Helm, 463 U.S. 277 (1983) .......... vi
Sylvester v. United States, 868 F.3d 503 (6th Cir. 2017) .......... 12
Taylor v. Kentucky, 436 U.S. 478 (1978) .......... vi
United States v. Baker, 807 F.2d 1315 (6th Cir. 1986) .......... 38
United States v. Brown, 66 F.4th 581 (6th Cir. 2023) .......... 51
United States v. Carpenter, 360 F.3d 591 (6th Cir. 2004) .......... vii, xi, 52
United States v. Dawson, 64 F.4th 1227 (11th Cir. 2023) .......... 38
United States v. Gagliardi, 506 F.3d 140 (2d Cir. 2007) .......... 45
United States v. Hillie, 39 F.4th 674 (D.C. Cir. 2022) .......... 39
United States v. Howard, 968 F.3d 717 (7th Cir. 2020) .......... 38
United States v. Leon, 468 U.S. 897 (1984) .......... 33
United States v. Lopez, 514 U.S. 549 (1995) .......... 46
United States v. Morrison, 529 U.S. 598 (2000) .......... 47
United States v. Overholt, 307 F.3d 1231 (10th Cir. 2002) .......... x
United States v. Presser, 844 F.2d 1275 (6th Cir. 1988) .......... x
United States v. Stevens, 559 U.S. 460 (2010) .......... ix, 44
United States v. Swafford, 512 F.3d 833 (6th Cir. 2008) .......... vi
United States v. Tykarsky, 446 F.3d 458 (3d Cir. 2006) .......... 45
United States v. Weaver, 99 F.3d 1372 (6th Cir. 1996) .......... 52
United States v. Whitley, 34 F.4th 522 (6th Cir. 2022) .......... 51
United States v. Wright, 774 F.3d 1085 (6th Cir. 2014) .......... 38
Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489 (1982) .......... 43
Wong Sun v. United States, 371 U.S. 471 (1963) .......... 32, 33, 54

## REQUEST FOR ORAL ARGUMENT

Defendant-Appellant, Samuel Alexander Kuhl, by and through his attorney, Sanford A. Schulman, respectfully requests oral argument. This case presents significant constitutional questions involving Fourth Amendment suppression, Sixth Amendment self-representation and competency to proceed pro se, sufficiency of evidence under 18 U.S.C. § 2251(a), judicial impartiality, vagueness and overbreadth challenges to §§ 2251(a) and 2422(b), Tenth Amendment federalism, due process violations, and Fourth Amendment violations arising from an unlawful traffic stop and warrant scope issues. These complex legal issues would benefit from the dialogue that oral argument provides.

## JURISDICTIONAL STATEMENT

The United States District Court for the Western District of Michigan had jurisdiction over this case pursuant to 18 U.S.C. § 3231, as Mr. Kuhl was charged with violations of federal criminal statutes, specifically 18 U.S.C. § 2251(a) and (e) (Sexual Exploitation of a Minor) and 18 U.S.C. § 2422(b) (Coercion and Enticement of a Minor).

A jury trial was conducted before the Honorable Jane M. Beckering from June 24 through June 27, 2025. The jury returned a guilty verdict on both counts on June 27, 2025. (R. 322, Trial Vol. IV 6/27/25, PgID 6–9.)

Sentencing was held on November 19, 2025. The court imposed a sentence of 360 months on Count 1 and 420 months on Count 2, to run concurrently, with an additional 48 months imposed consecutively to a Kalamazoo County state firearms conviction. (R. 383, Sentencing 11/19/25, PgID 58.) A timely Notice of Appeal was filed. (R. 376, Notice of Appeal, PgID 3938.) This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

**I.** Whether the trial court erred in permitting Mr. Kuhl to continue representing himself where his self-representation was so manifestly ineffective—including demanding to appear before the jury in jail clothing, failing to object to the prosecutor's leading questions on direct examination of the complainant, and conducting a cross-examination devoid of any discernible strategy—that he was clearly incompetent to conduct his own defense under Indiana v. Edwards, 554 U.S. 164 (2008)?

**Standard of Review:** Whether a defendant is competent to waive counsel and proceed pro se is reviewed de novo. Indiana v. Edwards, 554 U.S. 164, 174 (2008).

II. Whether the district court erred in denying the motion to suppress evidence where FBI Special Agent Buttery disclosed in his search warrant affidavit that he had previously obtained a warrant for the same Facebook User ID in connection with a separate FBI Detroit case and had re-examined that data before seeking the February 8, 2023 warrant, potentially rendering the subsequent search a warrantless re-examination of data obtained under an expired warrant and all derivative evidence fruit of the poisonous tree?

**Standard of Review:** This Court reviews de novo a district court's legal conclusions regarding the Fourth Amendment, while findings of fact are reviewed for clear error. United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004).

**II.** Whether the district court denied Mr. Kuhl his Sixth Amendment right to selfrepresentation where the Faretta hearing was not conducted until March 6, 2025— one day after the pretrial motions deadline—and the court failed to conduct a formal inquiry on the record into Mr. Kuhl's waiver of his right to counsel from the first day of trial through the verdict, thereby depriving him of the ability to meaningfully present his defense?

**Standard of Review:** The denial of the right to self-representation is structural error reviewed de novo and is not subject to harmless-error analysis. McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984).

**III.** Whether the evidence was insufficient to sustain the conviction under 18 U.S.C. § 2251(a) where the four videos identified as the charged visual depictions were self-recorded by the minor without specific direction or solicitation by Mr. Kuhl, the minor testified she could not identify specific requests for each video, and the statute has historically been applied only where the defendant directly produced the visual depictions?

**Standard of Review:** This Court reviews sufficiency of the evidence claims de novo, viewing the evidence in the light most favorable to the prosecution and asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).

**IV.** Whether the district court's conduct throughout the proceedings—including scheduling the Faretta hearing one day after the pretrial motions deadline, denying all twelve pro se pretrial motions, and the cumulative effect of procedural rulings adverse to the defense—pierced the veil of judicial impartiality in violation of the Due Process Clause?

**Standard of Review:** Claims of judicial bias are reviewed de novo when based on the record of the proceedings. Liteky v. United States, 510 U.S. 540, 555 (1994).

VI. Whether 18 U.S.C. § 2251(a) is unconstitutionally vague and overbroad in violation of the First and Fifth Amendments where the statutory definition of "sexually explicit conduct" fails to provide persons of ordinary intelligence fair notice of what conduct is prohibited and sweeps constitutionally protected expression within its ambit?

**Standard of Review:** Constitutional challenges to statutes are reviewed de novo. United States v. Stevens, 559 U.S. 460, 468 (2010).

VII. Whether 18 U.S.C. § 2422(b) is unconstitutionally vague in violation of the Fifth Amendment where the statute fails to define key terms including "sexual activity for which any person can be charged with a criminal offense," "facility of interstate or foreign commerce," and employs an ambiguous mens rea standard that has produced a circuit split?

**Standard of Review:** Constitutional challenges to statutes are reviewed de novo. United States v. Stevens, 559 U.S. 460, 468 (2010).

VIII. Whether the federal prosecution violated principles of federalism, comity, and the Tenth Amendment where the State of Michigan had already charged the same conduct through Van Buren County, the investigation was entirely local in origin, the federal jurisdictional element of interstate commerce was merely incidental to the alleged conduct, and the federal government's intervention disrupted ongoing state criminal proceedings?

**Standard of Review:** Questions of constitutional law, including Tenth Amendment challenges, are reviewed de novo. Bond v. United States, 564 U.S. 211, 217 (2011).

IX. Whether the district court's failure to reset the pretrial motion deadline following the Superseding Indictment, combined with the government's ongoing discovery violations, the withholding of critical forensic reports, and standby counsel's failure to adequately assist Mr. Kuhl, deprived him of due process and his right to effectively prepare his defense?

**Standard of Review:** Due process claims are reviewed de novo. United States v. Overholt, 307 F.3d 1231, 1241 (10th Cir. 2002). Discovery violations are reviewed for abuse of discretion. United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988).

X. Whether all evidence used to obtain the federal indictment should have been suppressed as the product of an unlawful traffic stop that exceeded its scope and duration, a bare-bones search warrant affidavit that failed to establish a nexus between the items searched and criminal activity, and searches by Sgt. Meredith and Det. Gensterblum that exceeded the scope of the Wyoming warrant, where the district court dismissed three comprehensive suppression motions without prejudice on procedural grounds without reaching the merits?

**Standard of Review:** This Court reviews de novo a district court's legal conclusions regarding the Fourth Amendment, while findings of fact are reviewed for clear error. United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004). The procedural dismissal of a suppression motion is reviewed for abuse of discretion. United States v. Gaitan, 171 F. App'x 523, 527 (6th Cir. 2006).

## STATEMENT OF THE CASE

On April 25, 2023, a federal grand jury in the Western District of Michigan returned a two-count Indictment against Samuel Alexander Kuhl. Count One charged Sexual Exploitation of a Minor in violation of 18 U.S.C. § 2251(a) and (e), alleging that between approximately May 13, 2021 and October 31, 2021, Mr. Kuhl employed, used, persuaded, induced, enticed, and coerced a 15-year-old female minor ("S.D.") to engage in sexually explicit conduct for the purpose of producing visual depictions. Count Two charged Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b). (R. 1, Indictment, PgID.1–2.) On April 15, 2025, the government obtained a Superseding Indictment containing the same two counts. (R. 147, Superseding Indictment.)

At his initial appearance on August 11, 2023, Magistrate Judge Ray Kent raised concerns about Mr. Kuhl's competency. The government filed a Brief Regarding Defendant's Competency on August 15, 2023, requesting evaluation at a

BOP Medical Center pursuant to 18 U.S.C. § 4241. (R. 15, Gov't Brief Re Defendant's Competency, PgID.23–27.) Mr.

Kuhl was committed to the custody of the Attorney General and transferred to the Metropolitan Correctional Center in Chicago for evaluation. On November 20, 2023, Drs. Robin Watkins and Priyanka Rao issued a forensic report finding that Mr. Kuhl met the criteria for Other Specified Schizophrenia Spectrum and Other Psychotic Disorder, rendering him incompetent to proceed. At a December 18, 2023 status conference, both parties stipulated to incompetency. On December 20, 2023, Magistrate Judge Kent entered an Order finding Mr. Kuhl not competent and committing him to the custody of the Attorney General for further inpatient evaluation and restoration to competency pursuant to 18 U.S.C. § 4241(d). (R. 28, Order Finding Defendant Not Competent, PgID.90–92.).

Despite the Court's order requiring transfer for restoration within ten days (R. 28, Order Finding Defendant Not Competent, PgID.91–92), Mr. Kuhl remained in the Newaygo County Jail without any transfer or restoration treatment for sixty-nine days. On March 5, 2024, the Federal Public Defender's Office filed a motion to compel transport. (R. 33, Motion to Compel Transport, PgID.124–126.)

Mr. Kuhl's counsel relationship deteriorated. On August 7, 2024, the FPD was relieved and new counsel appointed (R. 51, Order Granting Motion to Appoint Counsel, PgID.202). On February 14, 2025, Mr. Kuhl was found competent based

on Dr. Evan S. DuBois at FMC Butner. (R. 83, Order Determining Competence to Stand Trial, PgID.290–293.) On February 19, 2025, Mr. Kuhl filed a formal Motion to Proceed Pro Se asserting his Sixth Amendment right to self-representation. (R. 87, Pro Se Motion to Proceed Pro Se, PgID.300–301.) The Court granted this motion on March 7, 2025. (R. 95, Order Granting Motion to Proceed Pro Se, PgID.302–303.) The Faretta hearing was held on March 6, 2025—one day after the pretrial motions deadline of March 5, 2025. (R. 116, Faretta Hearing Transcript, PgID.681.)

Beginning March 6, 2025, Mr. Kuhl filed numerous substantive pro se pretrial motions attacking the Indictment on constitutional, statutory, and procedural grounds, including motions to dismiss Count Two as unconstitutional (R. 119, Pro Se Motion to Dismiss Count Two as Unconstitutional, PgID.694–728), to dismiss for prosecutorial misconduct (R. 120, Pro Se Motion to Dismiss for Prosecutorial Misconduct, PgID.729–744), and a comprehensive motion to dismiss the Indictment on IDRA, due process, equal protection, speedy trial, and federalism grounds (R. 124, Pro Se Motion to Dismiss Indictment, PgID.780–825). He also sought an extension of the pretrial motion deadline, asserting the Faretta hearing delay prejudiced his ability to prepare. (R. 131, Pro Se Motion for Extension of Pretrial Motion Deadline, PgID.903–906.) On March 28, 2025, the Court issued an Opinion and Order dismissing without prejudice the motions filed

after the deadline (ECF Nos. 119, 120, 122, 124) while granting in part the motion addressing the pretrial motion deadline. (R. 125, Opinion and Order on Pretrial Motions, PgID.826–831.) All remaining pretrial motions were subsequently denied. (R. 184, Opinion and Order Denying/Dismissing Motions.)

Trial commenced on June 24, 2025, with Mr. Kuhl proceeding pro se with standby counsel Scott G. Graham. On June 26, 2025, Mr. Kuhl elected to transfer active representation to Mr. Graham for the remainder of the government's case. The jury returned a guilty verdict on both counts on June 27, 2025. (R. 322, Trial Vol. IV 6/27/25, PgID 6–9.)

Sentencing was held on November 19, 2025, before Judge Beckering. The court calculated a guidelines range of life imprisonment based on an offense level of 43 and criminal history Category VI. The court varied downward, imposing 360 months on Count 1 and 420 months on Count 2 concurrent, with 48 months consecutive to a state firearms conviction. (R. 383, Sentencing 11/19/25, PgID 58.)

This timely appeal followed.

## STATEMENT OF FACTS

### A. The Investigation

In October 2022, Michigan State Police ("MSP") initiated a fraud investigation following Mr. Kuhl's arrest in Wyoming, Michigan. During that investigation, MSP discovered indications of a relationship between Mr. Kuhl and S.D., a minor born on February 5, 2007. MSP secured a search warrant for Mr. Kuhl's cellular device, found text communications and images believed to be of S.D., and conducted a forensic interview of S.D. on November 9, 2022. (R. 98-1, Search Warrant Affidavit, PgID.345.)

Concurrently, FBI Special Agent Jeff Buttery and Kalamazoo Department of Public Safety Detective John Stolsonburg had been conducting a parallel fraud investigation into Mr. Kuhl since early 2022. On January 25, 2023, SA Buttery obtained a federal search warrant for two phones belonging to Mr. Kuhl. Critically, SA Buttery disclosed in his search warrant affidavit that he had previously obtained a warrant for the same Facebook User ID 100009165769099 (vanity ID "Shane Shane") in connection with a separate FBI Detroit case, and had reexamined that data before seeking the February 8, 2023 warrant. (R. 98-1, Search Warrant Affidavit, PgID.344–346.)

On November 3, 2022, approximately forty cellular phones were seized from Mr. Kuhl across multiple law enforcement agencies, raising serious chain of custody questions for the specific Samsung and iPhone the government identified as the charged devices. (R. 98-2, Search Warrant Affidavit Attachment, PgID.348.)

D. **Digital Evidence and Chain of Custody**

Digital forensic analyst Michael Fry testified that he performed two extractions of Mr. Kuhl's iPhone 12 Pro Max—one in June 2022 and a second in June 2025. The second extraction was necessitated by the failure of the original hard drive on which the 2022 extraction had been stored, resulting in the loss of the majority of the 2022 extraction data. A new search warrant was obtained for the 2025 re-extraction. (R. 320, Trial Vol. III 6/26/25, PgID 87–91.)

E. **Trial Proceedings and Verdict**

A legally significant ruling arose mid-trial regarding the scienter element of Count Two. The court engaged in extensive analysis of whether 18 U.S.C. § 2422(b) required the government to prove that Mr. Kuhl subjectively knew S.D. was under the age of sixteen. The court ruled that the government was required to prove Mr. Kuhl's subjective knowledge of S.D.'s age. (R. 319, Trial Vol. II 6/25/25, PgID 136–141.)

Mr. Kuhl's self-representation at trial was marked by conduct that demonstrated his incompetence to serve as his own counsel. He demanded to appear before the jury in jail-issued clothing, despite the court's notation that civilian attire was available. (R. 318, Trial Vol. I 6/24/25, PgID 1–3.) During the government's direct examination of S.D., the prosecutor repeatedly asked leading questions, and Mr. Kuhl failed to lodge timely objections. His four-hour cross-examination of S.D. was devoid of any discernible litigation strategy, failing to effectively challenge the complainant's testimony on the critical elements of the charged offenses. On June 26, 2025, Mr. Kuhl elected to transfer active representation to standby counsel Mr. Graham, acknowledging his inability to present an effective defense. (R. 320, Trial Vol. III 6/26/25, PgID 2–12.)

The jury returned its verdict on June 27, 2025. On Count One, the jury found Mr. Kuhl guilty and specifically identified all four videos—Exhibits 20, 21, 22, and 23—as constituting sexually explicit conduct. On Count Two, the jury found Mr. Kuhl guilty and identified two specific dates: on or about October 31, 2021, and on or about August 24, 2022. (R. 322, Trial Vol. IV 6/27/25, PgID 6–9.)

**F. Sentencing**

Sentencing was held on November 19, 2025. The base offense level under USSG §2G2.1 was 32, with enhancements for the victim's age (2 levels), sexual penetration on multiple occasions (2 levels), use of a computer (2 levels), and use of a minor under USSG §3B1.4 (2 levels). An additional five-level Chapter 4 enhancement was applied under USSG §4B1.5 based on a finding that Mr. Kuhl engaged in a pattern of prohibited sexual conduct. The resulting offense level of 45 was capped at 43, and with a criminal history score of 27 points (Category VI), the advisory range was life. (R. 383, Sentencing 11/19/25, PgID 8–11.)

The court noted Mr. Kuhl's lack of youthful guidance and the nature of the offense—specifically that the victim was 14, not a younger child, and that Mr. Kuhl had not distributed the images. The court imposed 360 months on Count 1 and 420 months on Count 2 concurrent, with 48 months consecutive to the Kalamazoo County firearms conviction. (R. 383, Sentencing 11/19/25, PgID 58.)

G. **The Superseding Indictment**

On April 15, 2025, the government filed a Superseding Indictment (ECF No. 147, PgID.1053–1058), which retained the same two counts but significantly expanded the charged timeframe. The original Indictment alleged conduct between approximately May 13, 2021 and October 31, 2021—a period of roughly five and a half months. The Superseding Indictment expanded this timeframe to "on or about

May 8, 2021, and August 31, 2022"—nearly tripling the period to approximately sixteen months. (R. 147, Superseding Indictment, PgID.1053–1054.)

The Superseding Indictment also identified two specific devices subject to forfeiture: a Samsung Model SM-S901U1, Factory #R3CT30LK50N, 20220317, and an iPhone Model D54pAP, serial number F2LFVK860D46. (R. 147, Superseding Indictment, PgID.1055–1057.) The expanded timeframe and new language required Mr. Kuhl to review, verify, and potentially challenge substantially more evidence, yet the court did not reset the pretrial motion deadline to account for this significant change in the scope of the charges.

B. **The Relationship and Communications**

S.D. testified that she was approximately fourteen years old when she first made contact with Mr. Kuhl via Facebook in May 2021. She acknowledged on direct examination that when she first began communicating with Mr. Kuhl, she told him she was seventeen years old—a misrepresentation she admitted making deliberately. According to S.D., their initial communications were conducted through Facebook, where Mr. Kuhl's account appeared under the name "Shane Shane." When S.D. asked Mr. Kuhl his age, he told her he was "in my late 20s." (R. 319, Trial Vol. II 6/25/25, PgID 59–74.)

A Facebook message exchange admitted as Government Exhibit 11 shows that in September 2021, Mr. Kuhl sent S.D. a message reading: “Wait, so you’re 15?”—reflecting surprise and uncertainty about her actual age at that time. S.D. confirmed during cross-examination that this message was sent in September 2021, and that the relationship had been ongoing for several months before that exchange. (R. 319, Trial Vol. II 6/25/25, PgID 158–159.)

The court confirmed on the record—outside the presence of the jury—that it was “uncontested that [S.D.] told Mr. Kuhl in September she was not 17, she was not 16, and at some point she made very clear in those texts she was 14.” (R. 319, Trial Vol. II 6/25/25, PgID 129.)

C. **The Charged Visual Depictions**

The government introduced four videos as the charged sexually explicit depictions under Count One, all purportedly extracted from Mr. Kuhl’s iPhone 12 Pro Max: Exhibit 20 (dated October 27, 2021); Exhibit 21 (dated May 19, 2022); Exhibit 22 (dated May 27, 2022); and Exhibit 23 (dated August 22, 2022). (R. 320, Trial Vol. III 6/26/25, PgID 37–42.)

A significant contested issue at trial was whether Mr. Kuhl solicited those videos or whether S.D. sent them of her own accord. During her four-hour crossexamination by Mr. Kuhl, S.D. was pressed on whether he had specifically requested the videos. She confirmed that she could not identify specific requests

for each video, and acknowledged: “I’m not saying all of them but most of them, yes”—referring to whether requests accompanied the videos. The message immediately preceding Exhibit 23—the August 22, 2022 video—was a message from S.D. to Mr. Kuhl reading, “I miss you like crazy,” with no preceding solicitation from Mr. Kuhl visible in the record. (R. 319, Trial Vol. II 6/25/25, PgID 172; R. 320, Trial Vol. III 6/26/25, PgID 40.)

H. **Multi-Agency Investigation and Prior State Charges**

The investigation underlying the federal charges originated entirely through state and local law enforcement. Kalamazoo Department of Public Safety (“KDPS”) had been investigating Mr. Kuhl since late 2020 on allegations of fraud. As early as March 2021, the FBI began investigating Mr. Kuhl alongside KDPS, also for fraud. (R. 164, Pro Se Motion to Dismiss Indictment, PgID.1108–1110.)

On October 13, 2022, Mr. Kuhl was a passenger in a vehicle stopped for tinted windows in Wyoming, Michigan. Wyoming Police Department arrested Mr. Kuhl and seized two cellular phones from his person. Mr. Kuhl was released the next day without being charged, but authorities retained his property and obtained a search warrant for the phones. Upon searching the Samsung phone, Sgt. Meredith of the Wyoming PD claimed to have located evidence of fraud and turned at least one phone over to Michigan State Police. (R. 164, Pro Se Motion to Dismiss Indictment, PgID.1109.)

MSP Detective Gensterblum then further searched the Samsung phone and claims to have come across a message discussing driver's training with a person who claimed to be a sophomore in high school. Gensterblum continued to read through this conversation and claims that it began to turn sexual, resulting in Gensterblum opening a CSC investigation. The evidence related to the sex offenses charged in Mr. Kuhl's federal indictment were supposedly "came across" while Gensterblum was examining the extraction from the Samsung phone. (R. 164, Pro Se Motion to Dismiss Indictment, PgID.1109; R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1285.)

Critically, prior to the federal indictment, Van Buren County, Michigan charged Mr. Kuhl with seven felonies related to the same alleged victim and the same conduct underlying the federal charges. These state charges were authorized on January 31, 2023, and the state court proceedings were ongoing before the federal indictment was returned on April 25, 2023. Mr. Kuhl's family had retained attorneys for the state proceedings, and Mr. Kuhl had been adjudicated incompetent in both the state and federal cases. (R. 164, Pro Se Motion to Dismiss Indictment, PgID.1110–1111.)

The FBI's involvement in the sex offense investigation arose not through independent federal investigative activity, but only after SA Buttery overheard Mr. Kuhl's privileged jail phone call in mid-to-late November 2022, during which Mr.

Kuhl spoke with a law office seeking to file a suit against Wyoming PD officers. SA Buttery then contacted KDPS Detective Stolsonburg, who contacted Wyoming PD and MSP, ultimately obtaining a copy of the Samsung phone extraction. SA Buttery completely abandoned the approximately two-year-long fraud investigation to join the entirely local state CSC investigation into Mr. Kuhl. (R. 164, Pro Se Motion to Dismiss Indictment, PgID.1110, 1116.)

I. **Discovery Deficiencies and Standby Counsel Failures**

Throughout the pretrial proceedings, Mr. Kuhl faced persistent discovery deficiencies that hampered his ability to prepare his defense. The government withheld CCU Report #2980-22, which contained critical information about the extraction of the Samsung phone's data, including the specific Cellebrite program used, how data was classified upon extraction, the exact date of extraction, and a hash of the data extraction. Mr. Kuhl did not receive this report until May 3, 2025—despite the report being referenced in MSP Incident Reports FIT-0000087-22 and FIT-0000091-22 that were provided in earlier discovery. (R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1283–1285.)

Mr. Kuhl did not receive the federal search warrant of January 25, 2023—one of the principal warrants supporting the government's case for the iPhone referenced in the indictment—until April 15, 2025. That warrant contained no date of execution and no inventory of what was seized, in violation of Federal Rule of

Criminal Procedure 41 and C.F.R. § 128-50.101. Similarly, none of the four federal search warrants provided to Mr. Kuhl through discovery contained execution dates or inventories, reflecting a continuous disregard by SA Buttery for the rules governing search warrants and evidence records. (R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1284– 1287.)

The government also provided only partial copies of MSP reports and failed to provide the supporting affidavit for the KDPS warrant used to search Mr. Kuhl's phone in 2021. Mr. Kuhl needed these affidavits and warrants to challenge the chain of evidence, as the KDPS warrant appeared to be fatally defective, which would render the June 2022 warrant based on tainted evidence. (R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1285–1286.)

Standby counsel Scott Graham failed to adequately assist Mr. Kuhl in navigating these discovery and procedural issues. On April 29, 2025, the court held a hearing on Mr. Kuhl's motion to compel discovery (ECF No. 145) and Mr. Graham's motion for clarification of standby counsel's function (ECF No. 159). Magistrate Judge Kent granted the motion to compel in part but allowed standby counsel to "self-define" the scope of his discovery assistance. (R. 167, Order on Motion to Compel; Standby Counsel Scope, PgID.1101.) Mr. Graham did not move to compel discovery while still representing Mr. Kuhl prior to the Faretta hearing, and Mr. Kuhl was severely hindered by the lack of communication with

Mr. Graham, who was described by others familiar with his practice as extremely difficult to contact. (R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1279–1282.)

J. **Pretrial Motion Deadline and Superseding Indictment**

On February 18, 2025, Judge Beckering set the pretrial motion deadline for March 5, 2025 (ECF No. 84), in an order that Mr. Kuhl had not yet received. Mr. Kuhl was not informed of this deadline until February 21, 2025, at which time he also learned that his Faretta hearing had been set for March 6, 2025—the day after the pretrial motion deadline. Mr. Kuhl immediately requested through standby counsel's secretary that the Faretta hearing be advanced to an earlier date. He also filed a pro se motion requesting the hearing be moved (ECF No. 143, PgID.1033–1035), but this motion was rejected because Mr. Kuhl was still represented by Mr. Graham. (R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1277.)

When the government filed the Superseding Indictment on April 15, 2025, Mr. Kuhl assumed the motion schedule as well as the speedy trial clock would restart, as he was being rearraigned. He raised these questions during the arraignment on April 25, 2025, before Magistrate Sally Berens, but received no clear answer. At the April 29, 2025 hearing, Mr. Kuhl again sought clarification as to whether the pretrial motion deadline had been or would be reset due to the

Superseding Indictment. Magistrate Kent specifically asked standby counsel if there were "any speedy trial issues" but did not direct this question to Mr. Kuhl. Without conferring with Mr. Kuhl, standby counsel answered in the negative. (R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1278–1279.)

The Speedy Trial Act, 18 U.S.C. § 3161 et seq., requires that trial commence within seventy days of indictment or initial appearance. While the filing of a superseding indictment does not reset the speedy trial clock for offenses charged in the original indictment, Sylvester v. United States, 868 F.3d 503, 508 (6th Cir. 2017), the pretrial motion deadline similarly was not reset despite the substantially expanded timeframe and new language in the Superseding Indictment. The failure to reset this deadline, combined with the ongoing discovery deficiencies and standby counsel's inadequate assistance, effectively denied Mr. Kuhl any meaningful opportunity to challenge the Superseding Indictment. (R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1275–1278.)

K. **Government Misconduct and Standby Counsel Deficiencies**

On May 14, 2025, Mr. Kuhl filed a Motion to Dismiss and Replace Standby Counsel (ECF No. 182), detailing further deficiencies in the government's conduct and standby counsel's representation. Mr. Kuhl alleged that the government acted with reckless disregard in hastily securing the indictment while he was serving an

MDOC sentence and was unable to meaningfully participate in his own defense. (R. 182, Motion to Appoint Replacement Counsel; Motion to Dismiss, PgID.1295–1298.)

Standby counsel Scott Graham was appointed on August 29, 2024, but did not meet with Mr. Kuhl until January 12, 2025—nearly five months later and the day before the competency hearing. Graham scheduled a phone conference at FMC-Butner but never picked up the phone. Graham initially told Mr. Kuhl that complete discovery had been provided, but later reversed this position after subsequent meetings revealed the discovery was incomplete. (R. 182, Motion to Appoint Replacement Counsel; Motion to Dismiss, PgID.1299–1302.) Additionally, the government introduced evidence to the grand jury outside the original indictment's timeframe, and the original indictment referenced "photographs" while discovery revealed the evidence consisted of videos—a discrepancy that caused Mr. Kuhl significant confusion about what he was defending against. (R. 182, Motion to Appoint Replacement Counsel; Motion to Dismiss, PgID.1303–1307.) As of May 8, 2025, the government had provided inventory returns for only two of the four federal warrants. (R. 182, Motion to Appoint Replacement Counsel; Motion to Dismiss, PgID.1308–1310.)

L. **The Court's Comprehensive Order on Pretrial Motions**

On May 15, 2025, the district court entered its Opinion and Order (ECF No. 184), ruling on twenty-two of Mr. Kuhl's motions, plus an objection to a Magistrate Judge's order, in a single order. The court denied ECF Nos. 97, 100–103, 111, 131–132, 139, and 175, and dismissed ECF Nos. 126, 135, 164–166, 174, and 182. (R. 184, Opinion and Order Denying/Dismissing Motions.) With respect to the superseding indictment, the court noted that "the filing of a superseding indictment does not create a new case" and that Mr. Kuhl had filed thirty-three motions since the Faretta hearing. (R. 184, Opinion and Order Denying/Dismissing Motions.) The court found the original indictment sufficient under the Hamling standard but did not address Mr. Kuhl's specific arguments regarding the pretrial deadline, discovery violations, or the constitutional challenges to the statutes.

M. **The Wyoming Traffic Stop, Search Warrants, and Scope Violations**

On May 22, 2025, Mr. Kuhl filed three comprehensive suppression motions (ECF Nos. 188, 189, and 190) totaling approximately 153 pages. These motions detailed the following chain of events: On October 13, 2022, Wyoming PD Officer Bernard stopped a vehicle for tinted windows. Mr. Kuhl was a passenger. Officer Bernard exceeded the scope and duration of the traffic stop by seizing Mr. Kuhl's two cellular phones. Mr. Kuhl was arrested and released the next day without being

charged, but the phones were retained. (R. 190, Pro Se Motion to Suppress Evidence [Third], PgID.1451–1463.)

Wyoming PD Det. Kroschel obtained a search warrant for the phones, but her supporting affidavit failed to establish a nexus between the phones and any criminal activity, failed to establish probable cause connecting Mr. Kuhl to illegal activity, and failed to show evidence of a crime would be found on the phones. Kroschel did not execute the warrant herself; she relied on Sgt. Meredith, who was allegedly unfamiliar with the warrant's scope. (R. 188, Pro Se Motion to Suppress Evidence [First], PgID.1360–1390.)

Sgt. Meredith of Wyoming PD conducted a full forensic analysis of the Samsung phone using Cellebrite, even though the Samsung was not listed under the warrant's "seize, secure, tabulate" statement. The Cellebrite extraction had already classified fraud-related data separately, yet officers examined the entire phone extraction. MSP Det. Gensterblum then examined the extraction and claims to have "came across" text messages about driver's training and being a sophomore—communications that were not facially incriminating—and opened a CSC investigation based on those messages. CCU Report #2980-22 confirmed that Meredith had conducted a full forensic analysis far beyond the fraud-related scope of the Wyoming warrant. (R. 189, Pro Se Motion to Suppress Evidence [Second], PgID.1424–1440.)

N. **Procedural Dismissal of Suppression Motions**

On May 23, 2025, the court entered an Order (ECF No. 193) dismissing all three suppression motions (ECF Nos. 188, 189, 190) without prejudice. The court did not address the merits of the suppression arguments. Instead, the dismissal was based solely on two procedural grounds: (1) Mr. Kuhl had not sought leave to file the motions; and (2) the handwritten briefs exceeded the 25-page limit prescribed by W.D. Mich. LCrimR 47.1(b)(i). The court noted the three motions totaled approximately 153 pages and contained overlapping issues. (R. 193, Order Dismissing Suppression Motions Without Prejudice.) This procedural disposition denied Mr. Kuhl any substantive judicial review of the legality of the traffic stop, the warrant, and the searches that produced all evidence underlying the federal charges.

O. **Pretrial Rulings on Recusal, Reconsideration, and Leave Motions**

On June 2, 2025, the court issued two significant orders. In the first order (ECF No. 222), the court denied Mr. Kuhl's Motion to Recuse (ECF No. 207) and Motion for Reconsideration (ECF No. 195). The court addressed seven arguments raised by Mr. Kuhl and rejected each, citing Hopson v. Gray and W.D. Mich. LCivR 7.4. (R. 222, Opinion and Order Denying Reconsideration and Recusal, PgID.1826–1830.)

In the second order (ECF No. 223), the court ruled on multiple leave motions. Critically, the court reinstated Mr. Kuhl's Motion to Suppress (ECF No. 189), which had previously been dismissed for procedural reasons. The court denied ECF Nos. 201, 210, and 211, found ECF No. 202 moot, and denied ECF No. 208 in part while referring it in part. The court found itself bound by United States v. Perry, 116 F.4th 578 (6th Cir. 2024) in reaching its determinations. (R. 223, Opinion and Order Reinstating Motion 189, PgID.1831–1835.)

P. **Rulings on Discovery, Sanctions, and Jencks Act Objections**

Also on June 2, 2025, the court denied Mr. Kuhl's Motion for Discovery Sanctions (ECF No. 138), his Jencks Act objections regarding the Minor 1 interview (ECF No. 169, citing 18 U.S.C. §3500), and his motions for return of property (ECF Nos. 170, 178, 179), relying on Savoy v. United States. (R. 224, Opinion and Order Denying Sanctions and Return of Property, PgID.1836–1837.)

Q. **Motion for Advisory Co-Counsel and Magistrate Rulings**

On June 4, 2025, Mr. Kuhl filed a Motion for Advisory Co-Counsel (ECF No. 229), citing McKaskle v. Wiggins, 465 U.S. 168, 176 (1984), and the five-part standby counsel role outlined in United States v. Shepard. Mr. Kuhl documented standby counsel Graham's refusal to assist with legal research and his inability to communicate with counsel. (R. 229, Pro Se Motion to Appoint Advisory Co-Counsel, PgID.1856–1861.)

On June 6, 2025, Magistrate Judge Kent entered an order (ECF No. 234) granting in part Mr. Kuhl's discovery motion (ECF No. 171), specifically paragraphs 1, 2, 8, and 9. The government was directed to review forensic reports responsive to ECF No. 191. ECF Nos. 172, 182, and 229 were denied. (R. 234, Order on Discovery Motions, PgID.1877–1878.)

On June 9, 2025, the court denied Mr. Kuhl's Motion to Sever Charges (ECF No. 227) and his Motion for Leave to File Reply Brief (ECF No. 228). ECFNo. 231 was dismissed as moot. (R. 236, Opinion and Order Denying Leave to File, PgID.1880–1882.)

R. **Motion for Expert Examination of Law Enforcement Devices**

On June 9, 2025, Mr. Kuhl filed a Motion for Expert to Examine Law Enforcement Devices (ECF No. 239) detailing the chain of custody for electronic evidence including the iPhone (seized November 2021, extracted June 2022), Facebook data (warrant March 8, 2022; second warrant February 8, 2023), and Samsung phone (seized October 2022). (R. 239, Motion to Examine Law Enforcement Devices, PgID.1886–1896.)

October 13, 2022, subjected to a warrant on October 14, 2022, and extracted by Sgt. Meredith of the Internet Crimes Against Children (ICAC) task force. The extraction was transferred via USB to Detective Gensterblum, who "came across"

evidence leading to the November 9, 2022 CSAM warrant. (R. 239, Motion to Examine Law Enforcement Devices, PgID.1886– 1896.)

S. **Brady/Giglio Violation Motion**

On June 11, 2025, Mr. Kuhl filed a Motion for Brady/Giglio violation (ECF No. 245), asserting that the Michigan State Police interview of Minor 1 contained exculpatory statements. According to Mr. Kuhl, Minor 1 stated that she loved the defendant, described their relationship as dating and consensual, and acknowledged that she deliberately snuck out to see him. Mr. Kuhl further alleged that Minor 1 had a criminal history reflected in Facebook messages and referenced Van Buren County Sheriff Report No. V346049. Mr. Kuhl also objected that the government disclosed irrelevant messages beyond the motion in limine deadline on June 3, 2025. (R. 245, Motion for Leave to File Beyond Pretrial Deadline, PgID.1937–1945.)

T. **Denial of Subpoena Motions and Suppression Ruling**

On June 16, 2025, the court denied Mr. Kuhl's subpoena motions (ECF Nos. 246, 247) for procedural defects. (R. 257, Order Denying Subpoena Motions, PgID.2113–2114.) The court also denied the suppression motion (ECF No. 189), finding the October and November 2022 warrants valid with reasonable search scope. (R. 258, Opinion and Order Denying Motion to Suppress 189, PgID.2115–2121.)

U. **Eve-of-Trial Rulings**

On June 17, 2025, the day before trial, the court denied Mr. Kuhl's reply brief, Brady/Giglio motion, standby counsel objection, and related motions. (R. 264, Opinion and Order Denying Motions, PgID.2138–2141.)

V. **Trial Proceedings and Verdict**

Trial commenced on June 24, 2025. On June 26, 2025, the court ruled on trial motions (ECF No. 282): granting Mr. Kuhl's motion regarding emojis (ECF No. 275), granting his motion regarding expert testimony (ECF No. 276), and denying his motion regarding jury instructions (ECF No. 280). (R. 282, Order on Trial Motions, PgID.2395.)

Significantly, during trial the court entered an Order Rejecting Pleading (ECF No. 281), rejecting multiple motions filed by Mr. Kuhl because "Filer is represented by counsel." This order indicated that Mr. Kuhl was no longer considered pro se during part of the trial, despite having been granted Faretta rights. The jury returned a verdict of guilty on both Count 1 (18 U.S.C. §2251(a)(e)) and Count 2 (18 U.S.C. §2422(b)). (R. 281, Order Rejecting Multiple Pro Se Motions, PgID.2394.)

W. **Post-Verdict Motions: Rule 33 Supplement and Prosecutorial Misconduct**

On July 16, 2025, Mr. Kuhl filed a Supplement to his Rule 33 New Trial Motion (ECF No. 298), alleging Brady violations for failing to disclose depiction viewing dates and ineffective assistance of counsel. (R. 298, Pro Se Motion for New Trial (Supplement), PgID.2507–2510.)

X. **Motion to Arrest Judgment**

On July 16, 2025, Mr. Kuhl filed a Motion to Arrest Judgment under Rule 34 (ECF No. 300), arguing Count 1 lacked interstate commerce proof, §2251(a) is vague as to "transmitted" and "live visual depiction," Count 2 lacks jurisdiction, and Michigan's prior custody invokes Younger abstention and Tenth Amendment concerns. (R. 300, Pro Se Motion to Set Aside Judgment, PgID.2517–2525.)

Y. **Post-Verdict Supplements and Continued Denial of Counsel**

On August 7, 2025, Mr. Kuhl filed a Post-Verdict Motions Supplement (ECF No. 315), raising Younger abstention concerns, warrant validity issues under Wyoming law, ineffective assistance claims, and property retention violations under MCL 600.4706(1)(a). (R. 315, Pro Se Motion to Vacate Verdict, PgID.3476–3484.)

On August 11, 2025, the court denied Mr. Kuhl's fourth motion for counsel appointment (ECF No. 310), and on August 15, 2025, denied the motion for leave to file a reply brief (ECF No. 323) as moot. (R. 316, Order Denying Motion to Appoint Counsel, PgID.3485–3486; R. 327, PgID.3531.)

Z. **Supplement to Motion for Acquittal and New Trial**

On August 13, 2025, Mr. Kuhl filed a Supplement to his Motion for Acquittal/New Trial (ECF No. 324), arguing insufficient evidence for Count 2 and that the government switched its theory midtrial from June 1, 2021 to October 31, 2022. (R. 324, Pro Se Supplement re Motions 298, 299, PgID.3504–3508.)

Also on August 13, 2025, Mr. Kuhl filed a Supplement to his Motion to Arrest Judgment (ECF No. 325), with an attached Memorandum asserting that the court committed plain error by not granting the Motion to be Provided with Grand Jury Transcripts (ECF No. 99) and the Motions to Dismiss (ECF Nos. 100, 103). The Memorandum argued three main points: (A) the grand jury was improperly instructed on the law, with the jurisdictional element of Count 1 based on materials presented a different theory at trial; (B) the grand jury was influenced by improper evidence and excessive hearsay testimony; and (C) the superseding indictment materially altered the initial indictment, tripling the charged timeframe and adding specifically different conduct. (R. 325, Pro Se Supplement re Motions 298, 299, PgID.3510–3525.)

AA. **Motion for Takeover and Transition of Representation**

On September 17, 2025, Mr. Kuhl filed a Motion for Takeover (ECF No. 345), waiving pro se status and requesting standby counsel Scott Graham assume representation. (R. 345, Motion to Waive Pro Se Status, PgID.3601–3602.)

On September 19, 2025, the court granted the Motion for Takeover (ECF No. 347), ordering Mr. Graham to assume representation and perfect the appeal, and denied the earlier Motion to Appoint New Counsel as moot. (R. 347, Order Granting Counsel to Resume Representation, PgID.3635–3636.)

BB. **Motion for New Trial and Final Denial of Counsel**

On October 6, 2025, Magistrate Judge Kent denied Mr. Kuhl's most recent motion to appoint counsel (ECF No. 351), the fifth such denial, relying on the reasons given in prior denials at ECF Nos. 297, 316, and 347. (R. 353, Order Denying Motion to Appoint Counsel, PgID.3726.)

On October 14, 2025, Mr. Kuhl filed a comprehensive handwritten Motion for New Trial under Federal Rule of Criminal Procedure 33 (ECF No. 357), raising four categories of error: (1) erroneous court rulings and mistakes during trial, including the wrongful denial of the Motion to Sever (ECF No. 227) as untimely, the refusal to order the government to disclose dates and times of depiction production, the refusal to define the term "transmitted" in the context of §2251(a), and the verdict form allowing non-unanimous conviction on Count 1; (2)

prosecutorial misconduct; (3) newly discovered evidence; and (4) ineffective assistance of counsel. (R. 357, Pro Se Motion for New Trial, PgID.3737–3768.)

The Motion argued the verdict form allowed non-unanimous conviction without deciding the specific offense, creating duplicity problems analogous to United States v. Pulido. (R. 357, Pro Se Motion for New Trial, PgID.3741.) The district court erred in denying Mr. Kuhl's Motion to Suppress (ECF No. 189), failing to address warrant deficiencies, chain of custody issues, and the lack of federal warrant for Samsung extraction.

The government committed prosecutorial misconduct by switching its theory midtrial and failing to disclose depiction viewing dates under Brady. Grand jury proceedings were fundamentally flawed due to improper jury instructions, excessive hearsay, and material alterations in the superseding indictment.

## SUMMARY OF THE ARGUMENT

Mr. Kuhl's conviction and sentence should be reversed for nine independent reasons, each of which constitutes reversible error.

**First**, the district court erred in denying Mr. Kuhl's motion to suppress evidence. SA Buttery disclosed in his own affidavit that he had previously obtained a warrant for the same Facebook User ID in connection with a separate FBI Detroit case and had re-examined that data before seeking the February 8, 2023 warrant. If the Detroit case warrant's execution period had expired, the re-examination of that

data constituted a warrantless search. All evidence derived from that reexamination—including the January 25, 2023 phone search warrant, the communications data, and ultimately the charged visual depictions—was fruit of the poisonous tree and should have been suppressed.

**Second**, the district court denied Mr. Kuhl his Sixth Amendment right to self-representation. Mr. Kuhl filed his Motion to Proceed Pro Se on February 19, 2025, but the Faretta hearing was not held until March 6, 2025—one day after the pretrial motions deadline. This timing effectively prevented Mr. Kuhl from filing pretrial motions by the deadline because he was still represented by counsel whose performance he had repeatedly challenged. Moreover, from the first day of trial through the verdict, the court did not conduct a formal inquiry on the record into

Mr. Kuhl's waiver of his constitutional right to counsel as required by Faretta v. California, 422 U.S. 806 (1975). The deprivation of the right to self-representation is structural error requiring automatic reversal. Moreover, the trial court should not have permitted Mr. Kuhl to represent himself where his self-representation was so manifestly ineffective that he was clearly incompetent to conduct his own defense under Indiana v. Edwards, 554 U.S. 164 (2008). Mr. Kuhl demanded to appear in jail clothing, failed to object to the prosecutor's leading questions on direct examination, and conducted a cross-examination of S.D. devoid of any discernible strategy.

**Third**, the evidence was insufficient to sustain the conviction under 18 U.S.C. § 2251(a). The four videos introduced as the charged visual depictions were self-recorded by S.D. S.D. herself testified that she could not identify specific requests by Mr. Kuhl for each video. The last video (Exhibit 23) was preceded by S.D.'s unsolicited message "I miss you like crazy" with no preceding solicitation from Mr. Kuhl visible in the record. The statute has historically been applied only where the defendant directly produced the visual depictions by surreptitious recording or by being present and directing the filming. Mere receipt and storage of self-produced videos does not constitute "use" of a minor to produce visual depictions within the meaning of § 2251(a).

**Fourth**, the district court's cumulative conduct deprived Mr. Kuhl of a fair trial before an impartial tribunal. The court scheduled the Faretta hearing one day after the pretrial motions deadline; denied all twelve of Mr. Kuhl's substantive pro se motions; admitted prejudicial evidence over objection (Exhibit 12, text messages between S.D.'s friend and S.D. regarding suggested sexual contact); and overruled Mr. Kuhl's objection to a supplemental jury instruction during deliberations. The totality of these circumstances demonstrates a pattern of rulings that undermined the appearance of impartiality.

**Fifth**, 18 U.S.C. § 2251(a) is unconstitutionally vague and overbroad. The statutory definition of "sexually explicit conduct" in 18 U.S.C. § 2256(2)(A) fails to provide fair notice of what conduct is prohibited. The term "simulated" sexual conduct is nowhere defined, creating a standardless sweep that encompasses constitutionally protected expression. The statute's overbreadth implicates First Amendment concerns, as it potentially criminalizes the production and possession of material that is neither obscene nor produced through the exploitation of real children. (R. 135, Pro Se Motion to Dismiss Count One.)

**Sixth**, 18 U.S.C. § 2422(b) is unconstitutionally vague. The statute criminalizes using a "facility of interstate or foreign commerce" to "knowingly persuade, induce, entice, or coerce" a minor to engage in "sexual activity for which any person can be charged with a criminal offense." Each of these terms is undefined, and the circuits are split on fundamental questions including the required mens rea as to the minor's age and the meaning of "sexual activity." The statute also provides wildly disparate sentencing—a minimum of ten years imprisonment or life imprisonment—without adequate guidance as to which penalty applies. (R. 166, Second Pro Se Motion to Dismiss Count Two.)

**Seventh**, the federal prosecution violated principles of federalism, comity, and the Tenth Amendment. The entire investigation originated through state and local law enforcement—KDPS, Wyoming PD, and MSP—and Van Buren County

had already charged Mr. Kuhl with seven felonies arising from the same conduct before the federal indictment was returned. The FBI entered the investigation not through independent federal activity but only after SA Buttery overheard a privileged jail phone call and then reached out to state agencies. The interstate commerce jurisdictional element is merely incidental, as the conduct alleged was purely local in nature. Michigan is fully capable of, and was already, prosecuting this conduct under its own criminal statutes. (R. 164; R. 165.)

**Eighth**, the district court's failure to reset the pretrial motion deadline following the Superseding Indictment, the government's systematic discovery violations, and standby counsel's failure to adequately assist Mr. Kuhl collectively deprived him of due process. The Superseding Indictment nearly tripled the charged timeframe, yet Mr. Kuhl was given no additional time to file pretrial motions challenging the expanded charges. Critical forensic reports, search warrants, and warrant affidavits were withheld or provided only in part. None of the four federal search warrants contained execution dates or inventories as required by Federal Rule of Criminal Procedure 41. Standby counsel was allowed to self-define the scope of his assistance, and his severe lack of communication left Mr. Kuhl effectively without the procedural guidance necessary to navigate the federal system. (R. 167; R. 175.)

**Ninth**, the evidence used to obtain the federal indictment was the product of an unlawful traffic stop, a bare-bones warrant affidavit, and searches that exceeded warrant scope. On October 13, 2022, Wyoming PD Officer Bernard stopped a vehicle in which Mr. Kuhl was a passenger for tinted windows, then unlawfully extended the stop beyond its mission to seize Mr. Kuhl's phones. Wyoming PD Det. Kroschel's search warrant affidavit was bare bones, failing to establish a nexus between the phones and criminal activity. Sgt. Meredith and MSP Det. Gensterblum then exceeded the scope of the Wyoming warrant by conducting full forensic analyses unrelated to the fraud investigation that the warrant authorized.

The court dismissed Mr. Kuhl's three comprehensive suppression motions (ECF 188–190, totaling 153 pages) without prejudice on procedural grounds (ECF 193), effectively denying him the opportunity to challenge the legality of the evidence. (R. 188; R. 189; R. 190; R. 193.)

# ARGUMENT

## I. THE TRIAL COURT ERRED IN PERMITTING MR. KUHL TO REPRESENT HIMSELF WHERE HIS SELF-REPRESENTATION DEMONSTRATED HE WAS INCOMPETENT TO DO SO.

In Indiana v. Edwards, 554 U.S. 164 (2008), the Supreme Court held that the Constitution permits a trial court to deny self-representation to a defendant who, though competent to stand trial, lacks the mental capacity to conduct trial proceedings by himself. The Court recognized that "a right of self-representation at trial will not 'affirm the dignity' of a defendant who lacks the mental capacity to conduct his defense without the assistance of counsel." Id. at 176. While Edwards addressed the trial court's authority to deny self-representation, the same constitutional principles apply where a court permits self-representation despite overwhelming evidence that the defendant is incompetent to conduct his own defense.

Mr. Kuhl's conduct at trial conclusively demonstrated his incompetence to represent himself. He demanded to appear before the jury in jail clothing—a decision the Supreme Court has recognized as inherently prejudicial. Estelle v. Williams, 425 U.S. 501, 504–05 (1976). During the government's direct examination of S.D., the prosecutor repeatedly posed leading questions, and Mr. Kuhl failed to lodge timely objections—a fundamental trial skill that any competent advocate would exercise. His four-hour cross-examination of S.D. was

devoid of any discernible litigation strategy, failing to effectively challenge the complainant's testimony on critical elements of the charged offenses. By June 26, 2025, Mr. Kuhl himself acknowledged his inability to present an effective defense and transferred representation to standby counsel. (R. 320, Trial Vol. III 6/26/25, PgID 2–12.)

This Court has recognized that the competency standard for self-representation may be higher than the competency standard for standing trial. See Godinez v. Moran, 509 U.S. 389 (1993); Edwards, 554 U.S. at 174–78. Mr. Kuhl's mental health history—including the initial finding of incompetency based on Other Specified Schizophrenia Spectrum and Other Psychotic Disorder (R. 28, Order Finding Defendant Not Competent, PgID.90–92)—combined with his manifestly ineffective self-representation at trial, establishes that the trial court should not have permitted him to proceed pro se. The court's failure to intervene constitutes reversible error.

## II. THE DISTRICT COURT ERRED IN DENYING THE MOTION TO SUPPRESS WHERE THE GOVERNMENT'S SEARCH AND SEIZURE OF EVIDENCE DERIVED FROM A PRIOR EXPIRED WARRANT.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The exclusionary rule, as articulated in Mapp v. Ohio, 367 U.S. 643 (1961), and the fruit of the poisonous tree doctrine

established in Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920), and Wong Sun v. United States, 371 U.S. 471 (1963), require the suppression of evidence derived from an unconstitutional search.

Here, the evidentiary chain begins with SA Buttery's own disclosure. In his February 8, 2023 search warrant affidavit (R. 98-1, Search Warrant Affidavit, PgID.346), SA Buttery acknowledged that he had previously obtained a warrant for Facebook User ID 100009165769099—the same account attributed to Mr. Kuhl—in connection with a separate FBI Detroit case. Critically, SA Buttery further disclosed that he had reexamined the data obtained through that earlier warrant before seeking the February 2023 warrant in the instant case.

This disclosure raises a fundamental Fourth Amendment question: if the execution period of the prior Detroit case warrant had expired by the time Buttery re-examined the data, then that re-examination constituted a warrantless search. A search warrant authorizes a specific search for a limited time. Once the warrant expires, re-examination of data previously obtained under its authority constitutes a new search requiring fresh authorization. See United States v. Ganias, 824 F.3d 199 (2d Cir. 2016) (en banc) (addressing the retention and re-examination of digital data beyond the scope of the original warrant).

If the Detroit warrant had expired, the subsequent chain of evidence is fatally tainted. SA Buttery's re-examination of the Facebook data led him to discover communications between Mr. Kuhl and S.D. Those communications formed the basis for the January 25, 2023 search warrant for Mr. Kuhl's phones. The phone search yielded the September 21, 2021 message in which S.D. informed Mr. Kuhl she was not 17 or 16, and Mr. Kuhl responded "Wait so you're 15?" (R. 98-1, Search Warrant Affidavit, PgID.345–346.) This message, and the videos subsequently extracted from the iPhone, are all derivative of the initial, potentially unlawful re-examination.

Under Wong Sun, 371 U.S. at 487–88, evidence obtained as an indirect result of an unconstitutional search must be suppressed unless the government can demonstrate that the evidence was obtained by means sufficiently distinguishable from the illegality to be purged of the primary taint. The government bears the burden of establishing the applicability of any exception to the exclusionary rule. See Franks v. Delaware, 438 U.S. 154 (1978).

The good faith exception articulated in United States v. Leon, 468 U.S. 897 (1984), does not apply here because the issue is not a facially deficient warrant but rather the warrantless re-examination of previously seized data. When an officer knowingly or recklessly relies on information obtained through an unlawful search to procure a new warrant, the good faith exception is inapplicable.

The chain of custody issues compound this problem. Approximately forty cellular phones were seized from Mr. Kuhl across multiple law enforcement agencies—MSP, KDPS, and the FBI—with the specific Samsung and iPhone passing through multiple custodians before the extractions. (R. 98-2, Search Warrant Affidavit Attachment, PgID.348.) The original 2022 extraction data was lost due to hard drive failure, necessitating a second extraction in June 2025. (R. 320, Trial Vol. III 6/26/25, PgID 87–91.) This chain of custody failure independently undermines the reliability of the government's core physical evidence.

The district court's denial of the motion to suppress was erroneous. This Court should reverse and remand with instructions to suppress all evidence derived from the prior expired warrant and its fruits.

## III. THE DISTRICT COURT FAILED TO CONDUCT AN ADEQUATE FARETTA COLLOQUY AND DENIED MR. KUHL THE ABILITY TO MEANINGFULLY EXERCISE HIS RIGHT TO SELF-REPRESENTATION.

The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel for his defense. Implicit in this guarantee is the converse right of the defendant to represent himself. Faretta v. California, 422 U.S. 806, 819 (1975). A defendant's exercise of this right must be knowing, voluntary, and intelligent, and the trial court must conduct a sufficient inquiry to ensure the

defendant understands the risks and disadvantages of self-representation. Id. at 835.

Mr. Kuhl filed his formal Motion to Proceed Pro Se on February 19, 2025, asserting his Sixth Amendment right. (R. 87, Pro Se Motion to Proceed Pro Se, PgID.300–301.) The Court granted the motion on March 7, 2025. (R. 95, Order Granting Motion to Proceed Pro Se, PgID.302–303.) The pretrial motions deadline was March 5, 2025. Yet the court did not hold the Faretta hearing until March 6, 2025—one day after the deadline had passed. (R. 116, Faretta Hearing Transcript, PgID.681.)

This sequencing was devastating to Mr. Kuhl's defense. Mr. Kuhl contends that the Court purposely scheduled the Faretta hearing after the pretrial deadline, that he had attempted to advance the hearing date but was rejected because he was still represented by counsel, and that he was therefore prejudiced in his ability to file pretrial motions. (R. 116, Faretta Hearing Transcript, PgID.681–682.) Indeed, Mr. Kuhl's standby counsel, Mr. Graham, had taken a 25-page motion Mr. Kuhl had intended to submit concerning abstention, Speedy Trial Act violations, IDRA violations, Tenth Amendment issues, Due Process violations, and other grounds for dismissal—and this was Mr. Kuhl's only copy. (R. 116, Faretta Hearing Transcript, PgID.681.) Mr. Kuhl filed this motion as soon as he could on March 27, 2025, raising IDRA, due process, equal protection, abstention, speedy trial, and

federalism grounds. (R. 124, Pro Se Motion to Dismiss Indictment, PgID.780–825.) He also filed a motion to dismiss for prosecutorial misconduct, documenting the government's intentional withholding and delay in providing discovery. (R. 120, Pro Se Motion to Dismiss for Prosecutorial Misconduct, PgID.729–744.)

Despite these constraints, beginning on March 6, 2025—the first day he was formally permitted to proceed pro se—Mr. Kuhl filed a concentrated wave of substantive pretrial motions through April 2025. These motions attacked the Indictment on grounds including facial insufficiency, duplicity, multiplicity, grand jury misconduct, Fourth and Fifth Amendment suppression, Eighth Amendment proportionality, Commerce Clause jurisdiction, Speedy Trial Act compliance, IDRA violations, and discovery failures. (R. 111, Pro Se Motion to Dismiss Count Two, PgID.673–693; R. 119, PgID.694–728; R. 120, Pro Se Motion to Dismiss for Prosecutorial Misconduct, PgID.729–744; R. 124, Pro Se Motion to Dismiss Indictment, PgID.780–825; R. 126, Pro Se Motion to Dismiss Indictment, PgID.832–878.)

On March 28, 2025, the Court denied several of these motions, dismissing those filed after the deadline without prejudice. (R. 125, Opinion and Order on Pretrial Motions, PgID.826– 831.) On May 15, 2025, the Court issued a comprehensive Opinion and Order denying or dismissing all remaining pretrial motions. (R. 184, Opinion and Order Denying/Dismissing Motions.)

Moreover, the trial court's record reflects a further deficiency: from the first day of trial through the verdict, the court did not conduct a formal inquiry on the record into Mr. Kuhl's waiver of his constitutional right to counsel as required by Faretta. (R. 318, Trial Vol. I 6/24/25, PgID 1–3.) While the court noted that Mr. Kuhl was wearing jail-issued clothing and that it was "his decision both to represent himself and to appear before the jury in that attire," this observation falls far short of the comprehensive colloquy required.

The Faretta hearing itself was inadequate. On June 26, 2025, Mr. Kuhl elected to transfer active representation to standby counsel Mr. Graham for the remainder of the government's case, citing his inability to present an effective defense while representing himself. (R. 320, Trial Vol. III 6/26/25, PgID 2–12.) The court conducted only a brief colloquy and accepted the transfer. This mid-trial transfer—from self-representation to counsel—further demonstrates that Mr. Kuhl's waiver of his right to counsel was neither knowing nor voluntary.

The delay in holding the Faretta hearing, combined with the failure to hold the hearing before trial commenced and Mr. Kuhl's relationship with appointed counsel, violated the Sixth Amendment. Furthermore, the sixty-nine-day delay in transporting Mr. Kuhl for competency restoration under 18 U.S.C. § 4241(d)—in violation of the Court's own ten-day transfer order—raises additional due process

concerns. See United States v. Baker, 807 F.2d 1315 (6th Cir. 1986) (addressing the legality of extended pre-hospitalization custody under § 4241(d)).

The deprivation of the Sixth Amendment right to self-representation is structural error that is not subject to harmless-error analysis. McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984). This Court should reverse Mr. Kuhl's conviction and remand for a new trial.

## IV. THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION UNDER 18 U.S.C. § 2251(a) WHERE THE VISUAL DEPICTIONS WERE SELF-PRODUCED BY THE MINOR WITHOUT DEFENDANT'S DIRECTION.

Under Jackson v. Virginia, 443 U.S. 307, 319 (1979), a conviction must be supported by evidence from which a rational trier of fact could find each essential element of the offense beyond a reasonable doubt. Section 2251(a) criminalizes the conduct of any person who "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a).

The critical question is whether Mr. Kuhl "used" S.D. to "produce" the charged visual depictions. The case law establishes that "use" under § 2251(a) has been applied where the defendant directly produced the visual depictions—either by filming the minor surreptitiously or by being present and directing the filming. See United States v. Dawson, 64 F.4th 1227 (11th Cir. 2023); United States v. Howard, 968 F.3d 717 (7th Cir. 2020); United States v. Wright, 774 F.3d 1085 (6th

Cir. 2014); United States v. Hillie, 39 F.4th 674 (D.C. Cir. 2022). Here, the evidence does not support a finding that Mr. Kuhl directed or produced the four videos. S.D. testified during her four-hour cross-examination that she could not identify specific requests by Mr. Kuhl for each video. She acknowledged: "I'm not saying all of them but most of them, yes"—an equivocal statement that falls short of establishing beyond a reasonable doubt that Mr. Kuhl specifically directed the production of each charged depiction. (R. 319, Trial Vol. II 6/25/25, PgID 172.)

The evidence regarding Exhibit 23 is particularly telling. The message immediately preceding the August 22, 2022 video was from S.D. to Mr. Kuhl reading "I miss you like crazy," with no preceding solicitation from Mr. Kuhl visible in the record. (R. 320, Trial Vol. III 6/26/25, PgID 40.) This suggests that the video was self-initiated by S.D., not produced at Mr. Kuhl's direction.

The Indictment's internal contradictions further undermine the conviction. Count One's first sentence alleges that Mr. Kuhl "knowingly employed, used, persuaded, induced, enticed, and coerced" S.D.—language connoting active, direct production. But the second sentence alleges that he "received and stored photographs of that conduct"—language describing passive receipt, which is a fundamentally different act. (R. 100, Pro Se Motion to Dismiss, PgID.376.) As Mr. Kuhl argued in his pretrial motions, "use" as historically applied in § 2251(a) cases refers to surreptitious filming or direct supervision of the filming, and is

incompatible with the allegation that the defendant merely received and stored visual depictions. (R. 102, Pro Se Motion to Dismiss, PgID.403–408.)

Moreover, Count One specifically alleges that Mr. Kuhl "received and stored photographs," not videos. Yet the government's evidence at trial consisted entirely of four videos. The discovery initially produced contained only a single self-recorded video by S.D. dated October 26, 2021. (R. 103, Pro Se Motion for Discovery, PgID.441–442.) This discrepancy between the charged conduct and the proof at trial further undermines the sufficiency of the evidence.

The evidence, viewed in the light most favorable to the prosecution, was insufficient for a rational jury to find beyond a reasonable doubt that Mr. Kuhl "used" S.D. to "produce" the visual depictions within the meaning of § 2251(a). The conviction on Count One should be reversed.

## V. THE DISTRICT COURT'S CONDUCT PIERCED THE VEIL OF JUDICIAL IMPARTIALITY AND DEPRIVED MR. KUHL OF A FAIR TRIAL

The Due Process Clause of the Fifth Amendment guarantees a criminal defendant the right to a fair trial before an impartial judge. See Liteky v. United States, 510 U.S. 540, 555 (1994). While judicial rulings alone rarely constitute a basis for recusal or a finding of bias, the totality of the circumstances may demonstrate a pattern of conduct that undermines the appearance of impartiality.

Id. Several aspects of the district court's handling of this case, taken together, pierced the veil of judicial impartiality.

**First**, the timing of the Faretta hearing. As detailed above, the court scheduled the hearing for March 6, 2025—one day after the pretrial motions deadline. Mr. Kuhl contends that he attempted to advance the hearing date but was told he could not because he was still represented by counsel. (R. 116, Faretta Hearing Transcript, PgID.682.) This created a structural impossibility: Mr. Kuhl could not file pro se motions before the deadline because he had not yet been granted pro se status, and by the time the hearing was held, the deadline had passed. The court's subsequent enforcement of the deadline against Mr. Kuhl's March 6 motions compounded the prejudice.

**Second**, the denial of all twelve substantive pretrial motions. While the denial of any single motion may have been within the court's discretion, the blanket denial of twelve motions—including well-developed constitutional challenges to the facial sufficiency of the Indictment, the duplicity and multiplicity of the counts, Eighth Amendment proportionality, Commerce Clause jurisdiction, and grand jury misconduct—without individualized analysis on the record raises concerns about whether each motion received the careful consideration it deserved.

**Third**, the admission of Exhibit 12 over defense objection. Prior to jury selection, Mr. Kuhl objected to the admission of text messages between Asia

Clark—a friend of S.D.—and S.D. regarding a suggested sexual contact. The defense argued that those messages had no relevance to the charges and were substantially more prejudicial than probative. The objection was overruled. (R. 318, Trial Vol. I 6/24/25, PgID 12–17.)

**Fourth**, the court's handling of the supplemental jury instruction. During deliberations on June 27, 2025, the jury submitted a note asking whether they needed a "link of a cellphone/internet to August 24, 2022 incident" for Count Two. The court responded with a supplemental instruction directing the jury to use common sense and draw only reasonable inferences. Mr. Kuhl objected to the second paragraph of the proposed instruction. The objection was overruled. (R. 322, Trial Vol. IV 6/27/25, PgID 2–5.)

**Fifth**, Mr. Kuhl's pretrial filings alleged that Judge Beckering had previously sat with the Michigan court that denied his mother's custody application in 2003. (R. 87, Pro Se Motion to Proceed Pro Se, PgID.300–301.) While judicial rulings in a prior case do not ordinarily constitute grounds for recusal, this circumstance—combined with the other factors identified above—contributes to the totality of circumstances that undermines the appearance of impartiality.

The cumulative effect of these proceedings—the structurally impossible Faretta timing, the blanket denial of pretrial motions, the admission of prejudicial evidence, the overruling of objections to supplemental instructions, and the prior

judicial involvement—demonstrates that Mr. Kuhl did not receive the fair and impartial trial guaranteed by the Due Process Clause. This Court should reverse and remand for a new trial before a different judge.

## VI. 18 U.S.C. § 2251(a) IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD IN VIOLATION OF THE FIRST AND FIFTH AMENDMENTS.

The Fifth Amendment's Due Process Clause requires that criminal statutes "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). Where First Amendment freedoms are implicated, the standards of permissible vagueness are "strict[er]." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982).

Section 2251(a) criminalizes the "use" of a minor to produce "visual depictions" of "sexually explicit conduct" as defined by 18 U.S.C. § 2256(2)(A). That definition includes "actual or simulated" sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, and "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A). The term "simulated" is nowhere defined in the statute. Nor is "lascivious exhibition." The absence of any statutory definition leaves persons of ordinary intelligence to guess at the boundary between protected and criminal conduct.

The statute's overbreadth is equally problematic. Under the First Amendment overbreadth doctrine, a statute may be facially invalidated if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." United States v. Stevens, 559 U.S. 460, 473 (2010). The undefined term "simulated" sexual conduct potentially criminalizes the production and possession of material that is neither obscene nor produced through the exploitation of real children, sweeping constitutionally protected expression within the statute's ambit. While the Supreme Court upheld § 2251's constitutionality in New York v. Ferber, 458 U.S. 747 (1982), that decision predated the enactment of the "simulated" language and did not address whether the undefined term creates standardless sweep. (R. 135, Pro Se Motion to Dismiss Count One, PgID.907–947.)

Mr. Kuhl raised these issues in his pro se Motion to Dismiss Count One (ECF No. 135). The district court dismissed this motion without substantive analysis in its May 15, 2025 Opinion and Order (ECF No. 184), simply noting that "Mr. Kuhl has not met the high bar required for a facial constitutional challenge." (R. 184, Opinion and Order Denying/Dismissing Motions.) This conclusory treatment failed to engage with the specific vagueness and overbreadth arguments presented.

**VII. 18 U.S.C. § 2422(b) IS UNCONSTITUTIONALLY VAGUE IN VIOLATION OF THE FIFTH AMENDMENT.**

Section 2422(b) criminalizes the use of a "facility of interstate or foreign commerce" to "knowingly persuade, induce, entice, or coerce" a minor to engage in "sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b). The statute fails to define any of these critical terms, leaving fundamental elements of the offense to judicial interpretation—interpretation that has produced a circuit split.

The circuits are divided on whether the government must prove the defendant knew the victim was a minor or merely that a reasonable person would have known. Compare United States v. Gagliardi, 506 F.3d 140, 148 (2d Cir. 2007) (requiring knowledge), with United States v. Tykarsky, 446 F.3d 458, 469 (3d Cir. 2006) (applying a lower standard). The undefined phrase "sexual activity for which any person can be charged with a criminal offense" incorporates by reference every state and federal sex offense statute without specifying which jurisdiction's law applies or what conduct qualifies—a standardless incorporation that creates the very kind of "trap for the innocent" the void-for-vagueness doctrine prohibits. Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).

The sentencing structure compounds the vagueness problem. Section 2422(b) provides for a "fine under this title and imprisonment for not less than 10 years or for life." This wildly disparate range—from ten years to life—is imposed without any statutory guidance as to which penalty applies under which circumstances, delegating unbridled sentencing discretion to the district court. Mr. Kuhl raised these issues in his pro se Motion to Dismiss Count Two (ECF No. 166). The district court dismissed this motion without addressing the circuit split or the sentencing disparity. (R. 166, Second Pro Se Motion to Dismiss Count Two, PgID.1059–1069; R. 184.)

**VIII. THE FEDERAL PROSECUTION VIOLATED PRINCIPLES OF FEDERALISM, COMITY, AND THE TENTH AMENDMENT.**

The Tenth Amendment reserves to the States those powers not delegated to the federal government. "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Criminal law enforcement has traditionally been a matter of state sovereignty. United States v. Lopez, 514 U.S. 549, 561 n.3 (1995).

The investigation underlying the federal charges originated entirely through state and local agencies: KDPS, Wyoming PD, and MSP. Van Buren County had already charged Mr. Kuhl with seven felonies related to the same victim and the same conduct before the federal indictment was returned. (R. 164, Pro Se Motion

to Dismiss Indictment, PgID.1108– 1111.) The FBI's involvement arose not through independent federal investigative activity but only after SA Buttery overheard a privileged jail phone call and then contacted state agencies to obtain copies of the Samsung phone extraction. SA Buttery then abandoned a two-year fraud investigation to join the entirely local state CSC investigation. (R. 164, Pro Se Motion to Dismiss Indictment, PgID.1110, 1116.)

The interstate commerce jurisdictional element is merely incidental to the alleged conduct. Both the defendant and the alleged victim resided in Michigan. The alleged conduct occurred in Michigan. The phones were seized in Michigan. The only interstate nexus is the use of a cellular telephone, which is present in virtually every modern criminal case and cannot alone sustain federal jurisdiction without converting all state criminal law into federal criminal law. See United States v. Morrison, 529 U.S. 598, 618 (2000) (rejecting the argument that Congress may regulate noneconomic, violent criminal conduct based solely on the conduct's aggregate effect on interstate commerce). Michigan was fully capable of, and was already, prosecuting this conduct under its own criminal statutes. (R. 164; R. 165, PgID.1070–1084.)

The principles of Younger abstention and Colorado River abstention further counseled against federal prosecution. Mr. Kuhl was already facing state prosecution in Van Buren County for the same conduct arising from the same investigation. The federal prosecution disrupted ongoing state proceedings and effectively preempted Michigan's sovereign authority to prosecute criminal conduct within its borders.

The district court dismissed the federalism motions (ECF Nos. 164–165) without addressing the Tenth Amendment arguments or the investigation's entirely local origins. (R. 184, Opinion and Order Denying/Dismissing Motions.)

## IX. THE DISTRICT COURT'S FAILURE TO RESET THE PRETRIAL MOTION DEADLINE, COMBINED WITH DISCOVERY VIOLATIONS AND STANDBY COUNSEL'S INADEQUATE ASSISTANCE, DEPRIVED MR. KUHL OF DUE PROCESS.

The Due Process Clause of the Fifth Amendment guarantees a criminal defendant a meaningful opportunity to prepare and present his defense. Crane v. Kentucky, 476 U.S. 683, 690 (1986). The convergence of the court's failure to reset the pretrial motion deadline, the government's persistent discovery violations, and standby counsel's abdication of responsibility collectively denied Mr. Kuhl this right.

When the government filed the Superseding Indictment on April 15, 2025, nearly tripling the charged timeframe and introducing new forfeiture allegations identifying specific devices, the pretrial motion deadline—which had been set for March 5, 2025 and had already passed—was not reset. Mr. Kuhl raised this issue at the April 25, 2025 arraignment and again at the April 29, 2025 hearing. The Magistrate Judge asked standby counsel Graham whether there were "any speedy trial issues," and Graham answered in the negative without conferring with Mr. Kuhl. (R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1277–1279.)

The government withheld CCU Report #2980-22 until May 3, 2025—a report containing critical information about the Samsung phone extraction that had been referenced in earlier discovery. (R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1283–1285.) One of the principal search warrants supporting the government's case for the iPhone was not provided until April 15, 2025, and it contained no execution date and no inventory as required by Federal Rule of Criminal Procedure 41. None of the four federal search warrants provided through discovery contained execution dates or inventories. (R. 175, Pro Se Motion for Reconsideration of Pretrial Motion Deadline, PgID.1284–1287.)

Standby counsel Graham's failures compounded these problems. Graham was appointed on August 29, 2024, but did not meet with Mr. Kuhl until January 12, 2025—nearly five months later, and the day before the competency hearing. (R. 182, Motion to Appoint Replacement Counsel; Motion to Dismiss, PgID.1299–1300.) Graham scheduled a phone conference at FMCButner but never picked up the phone. Graham falsely told Mr. Kuhl that complete discovery had been provided, only changing his position after subsequent meetings. (R. 182, Motion to Appoint Replacement Counsel; Motion to Dismiss, PgID.1300–1302.) The Magistrate Judge allowed Graham to "self-define" the scope of his standby counsel assistance (R. 167, Order on Motion to Compel; Standby Counsel Scope, PgID.1101), effectively permitting counsel to decide how little to do.

The district court's May 15, 2025 Opinion and Order (ECF No. 184) denied or dismissed twenty-two motions in a single order. The court denied ECF Nos. 97, 100–103, 111, 131–132, 139, 175 and dismissed ECF Nos. 126, 135, 164–166, 174, 182. (R. 184, Opinion and Order Denying/Dismissing Motions.) The blanket nature of this disposition—including the failure to address the specific pretrial deadline arguments or the discovery violations— further demonstrates that Mr. Kuhl was denied a meaningful opportunity to challenge the expanded charges.

## X. ALL EVIDENCE USED TO OBTAIN THE FEDERAL INDICTMENT WAS THE PRODUCT OF AN UNLAWFUL TRAFFIC STOP, A BAREBONES WARRANT AFFIDAVIT, AND SEARCHES THAT EXCEEDED WARRANT SCOPE.

### A. **The Wyoming Traffic Stop Was Unlawfully Extended**

On October 13, 2022, Wyoming PD Officer Bernard stopped a vehicle for tinted windows in which Mr. Kuhl was a passenger. The purpose of the stop was limited to the traffic infraction. Under Rodriguez v. United States, 575 U.S. 348, 354–55 (2015), authority for a traffic stop ceases when tasks tied to the traffic infraction are, or reasonably should have been, completed. “A seizure justified only by a police-observed traffic violation” cannot “become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission” of issuing a ticket. Id. at 350–51.

Officer Bernard exceeded both the scope and duration of the traffic stop by seizing Mr. Kuhl’s two cellular phones. Mr. Kuhl was a passenger, not the driver, and the seizure of his personal property was unrelated to the tinted-windows infraction. The Sixth Circuit has held that police may not extend a traffic stop to investigate matters unrelated to the stop’s purpose without independent reasonable suspicion. United States v. Whitley, 34 F.4th 522, 530 (6th Cir. 2022); United States v. Brown, 66 F.4th 581, 586–87 (6th Cir. 2023). Mr. Kuhl was released the next day without being charged, yet authorities retained his phones. (R. 190, Pro Se Motion to Suppress Evidence [Third], PgID.1451–1463.)

B. **Det. Kroschel's Warrant Affidavit Was Bare Bones**

Wyoming PD Det. Kroschel obtained a search warrant for the seized phones, but her affidavit was "bare bones"—it failed to establish a nexus between the phones and any criminal activity, failed to establish probable cause that Mr. Kuhl was connected to illegal activity, and failed to show that evidence of a crime would be found on the phones. (R. 188, Pro Se Motion to Suppress Evidence [First], PgID.1360–1390.) The Sixth Circuit has consistently held that a warrant affidavit must establish a nexus between the items to be searched and the criminal activity suspected. United States v. Carpenter, 360 F.3d 591, 594–95 (6th Cir. 2004) (en banc); United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996).

Moreover, Kroschel did not execute the warrant herself. She relied on Sgt. Meredith, who was allegedly ignorant of the circumstances underlying the warrant and the scope of the authorized search. (R. 188, Pro Se Motion to Suppress Evidence [First], PgID.1380–1385.) The warrant authorized a search related to the fraud investigation, yet the officers' search extended far beyond that authorization.

C. **Sgt. Meredith and Det. Gensterblum Exceeded the Warrant's Scope**

The Wyoming warrant authorized a search of Mr. Kuhl's phones for evidence related to fraud. The Samsung phone was not even listed under the warrant's "seize, secure, tabulate" statement. (R. 189, Pro Se Motion to Suppress Evidence [Second], PgID.1424–1430.) Despite this, Sgt. Meredith of Wyoming PD

conducted a full forensic analysis using Cellebrite technology and then turned the extraction data over to MSP. The Cellebrite extraction had already classified fraud-related data separately, yet officers chose to examine the entire extraction without limiting their review to the warrant's authorized scope. (R. 189, Pro Se Motion to Suppress Evidence [Second], PgID.1430–1435.)

MSP Det. Gensterblum then continued to rummage through the Samsung phone extraction and claims to have "came across" a text message discussing driver's training with a person who identified as a sophomore in high school. Neither the mention of driver's training nor the claim to be a high school sophomore is facially incriminating, and the plain view doctrine does not apply because the incriminating character of these communications was not "immediately apparent." Horton v. California, 496 U.S. 128 (1990). CCU Report #2980-22 confirms that Meredith conducted a full forensic analysis of the Samsung phone that went far beyond the fraud-related scope authorized by the Wyoming warrant. (R. 189, Pro Se Motion to Suppress Evidence 2nd, PgID.1435–1440.)

**D. The Court Denied the Suppression Motions on Procedural Grounds**

Mr. Kuhl filed three comprehensive suppression motions (ECF Nos. 188, 189, 190) totaling approximately 153 pages. On May 23, 2025, the court dismissed all three motions without prejudice (ECF No. 193), not on the merits but solely because Mr. Kuhl had not sought leave to file and his handwritten briefs exceeded

the 25-page limit under W.D. Mich. LCrimR 47.1(b)(i). (R. 193, Order Dismissing Suppression Motions Without Prejudice.) This procedural dismissal effectively denied Mr. Kuhl any opportunity to challenge the legality of the evidence that formed the foundation of the government's entire case.

The procedural dismissal was particularly prejudicial in light of the circumstances. Mr. Kuhl was proceeding pro se without legal training. He had been denied the pretrial motion deadline reset that would have allowed him to file motions in a timely manner. The court's rigid enforcement of page limits against a pro se defendant—on complex Fourth Amendment issues involving multiple warrants, multiple law enforcement agencies, and a chain of custody spanning three jurisdictions—denied Mr. Kuhl meaningful access to the suppression process. All evidence derived from the unlawful traffic stop, the bare-bones warrant, and the searches exceeding warrant scope should have been suppressed as fruit of the poisonous tree. <u>Wong Sun v. United States</u>, 371 U.S. 471, 487–88 (1963).

## CONCLUSION

WHEREFORE, the Defendant-Appellant, SAMUEL ALEXANDER KUHL, by and through his attorney, SANFORD A. SCHULMAN, respectfully requests this Honorable Court reverse the defendant-appellant's conviction and remand the matter for a new trial for the reasons stated herein.

Respectfully submitted,

/s/ Sanford A. Schulman
**SANFORD A. SCHULMAN**
Attorney for Defendant-Appellant
SAMUEL ALEXANDER KUHL
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
313-963-4740
Email: saschulman@comcast.net

Date: April 5, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 11,805 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-pt. Arial.

Respectfully submitted,

/s/ Sanford A. Schulman
SANFORD A. SCHULMAN
Attorney for Defendant-Appellant
SAMUEL ALEXANDER KUHL
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
313-963-4740
Email: saschulman@comcast.net

Date: April 5, 2026

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing APPELLANT, SAMUEL ALEXANDER KUHL'S PRINCIPAL BRIEF was filed with the Court's CM/ECF system this 5th day of April, 2026, which provides electronic service to all parties including Olivia Kay Ghiselli, Assistant United States Attorney, Western District of Michigan, 330 Ionia Ave. NW, Suite 501, Grand Rapids, MI 49503.

Respectfully submitted,

/s/ Sanford A. Schulman
SANFORD A. SCHULMAN
Attorney for Defendant-Appellant
SAMUEL ALEXANDER KUHL
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
313-963-4740
Email: saschulman@comcast.net

Date: April 5, 2026

## INDEX TO ADDENDA AND RELEVANT DISTRICT COURT DOCUMENTS

NOW COMES the Appellant, SAMUEL ALEXANDER KUHL, by and through his attorney, SANFORD A. SCHULMAN, and designates as relevant the following documents available electronically in the district court's record, case number 23-cr-44 in the Western District of Michigan:


| Record Entry No. | Document Description | Pg ID |
|---|---|---|
| R. 1 | Indictment (04/25/2023) | 1-6 |
| R. 15 | Government's Brief Regarding Defendant's Competency (08/15/2023) | 23-27 |
| R. 28 | Order Finding Defendant Not Competent; Order for Restoration (12/20/2023) | 90-92 |
| R. 50 | Defendant's Letter to FPD Demanding Withdrawal (08/01/2024) | 198-201 |
| R. 51 | Order Granting Motion to Appoint Counsel; Appointing FPD (08/07/2024) | 202 |
| R. 83 | Order Determining Defendant's Competence to Stand Trial (02/14/2025) | 290-293 |
| R. 87 | Pro Se Motion to Proceed Pro Se (02/19/2025) | 300-301 |
| R. 95 | Order Granting Motion to Proceed Pro Se (03/07/2025) | 302-303 |
| R. 100 | Pro Se Motion to Dismiss (03/06/2025) | ___ |
| R. 101 | Pro Se Motion to Dismiss (03/06/2025) | ___ |
| R. 102 | Pro Se Motion for Discovery (03/06/2025) | ___ |
| R. 103 | Pro Se Motion to Dismiss Count Two (03/06/2025) | ___ |
| R. 111 | Pro Se Motion to Dismiss Count Two (03/13/2025) | 673-693 |
| R. 119 | Pro Se Motion to Dismiss Count Two as Unconstitutional (03/20/2025) | 694-728 |
| R. 120 | Pro Se Motion to Dismiss Indictment for Prosecutorial Misconduct (03/21/2025) | 729-744 |
| R. 124 | Pro Se Motion to Dismiss Indictment (03/27/2025) | 780-822 |
| R. 125 | Opinion and Order Granting in Part, Denying in Part Motions; Dismissing Motions 119, 120, 122, 124 (03/28/2025) | 826-831 |
| R. 126 | Pro Se Dismissal Indictment (03/28/2025) | 832-878 |

| | | |
|---|---|---|
| R. 131 | Pro Se Motion for Extension of Pretrial Motion Deadline (04/02/2025) | 903-906 |
| R. 135 | Superseding Indictment (Redacted) (04/04/2025) | 907–947 |
| R. 147 | Pro Se Motion to Dismiss Indictment (04/15/2025) | 1053–1057 |
| R. 164 | Pro Se Motion to Dismiss Count One (04/25/2025) | 1108–1111 |
| R. 165 | Pro Se Motion to Dismiss Count Two (04/25/2025) | 1070–1084 |
| R. 166 | Second Pro Se Motion to Dismiss Count Two (04/25/2025) | 1059–1069 |
| R. 167 | Order Granting Motion to Compel 145 in Part; Standby Counsel Scope (04/29/2025) | 1101 |
| R. 175 | Pro Se Motion for Reconsideration of Pretrial Motion Deadline (05/08/2025) | 1275–1287 |
| R. 182 | Pro Se Motion to Appoint Replacement Counsel; Motion to Dismiss Superseding Indictment (05/14/2025) | 1295–1310 |
| R. 184 | Opinion and Order Denying Motions 97, 100-103, 111, 131-132, 139, 175; Dismissing Motions 126, 135, 164-166, 174, 182 (05/15/2025) | ___ |
| R. 188 | Pro Se Motion to Suppress Evidence [First] (05/22/2025) | 1360–1390 |
| R. 189 | Pro Se Motion to Suppress Evidence 2nd | 1424–1440 |
| R. 190 | Pro Se Motion to Suppress Evidence [Third] (05/22/2025) | 1451–1463 |
| R. 193 | Order Dismissing Suppression Motions 188, 189, 190 Without Prejudice (05/23/2025) | ___ |
| R. 207 | Pro Se Motion for Recusal (05/29/2025) | ___ |
| R. 222 | Opinion and Order Denying Motion for Reconsideration 195; Denying Motion for Recusal 207 (06/02/2025) | 1826–1830 |
| R. 223 | Opinion and Order Denying Motions 201, 210, 211; Reinstating Motion 189 (06/02/2025) | 1831–1835 |
| R. 224 | Opinion and Order Denying Motion for Sanctions 138; Denying Motions for Return of Property 170, 178, 179 (06/02/2025) | 1836–1837 |
| R. 229 | Pro Se Motion to Appoint Advisory Co-Counsel | 1856–1861 |
| R. 234 | Order on Discovery Motions; Denying Motion to Appoint Counsel 182, 229 (06/06/2025) | 1877–1878 |
| R. 236 | Opinion and Order Denying Motions for Leave to File 227, 228 (06/09/2025) | 1880–1882 |
| R. 239 | Pro Se Motion to Appoint Expert to Examine Law Enforcement Devices (06/09/2025) | 1886–1896 |
| R. 245 | Pro Se Motion for Leave to File Beyond Pretrial Motion Deadline (06/11/2025) | 1937–1945 |

| | | |
|---|---|---|
| R. 257 | Order Denying Motions for Subpoena 246, 247 | 2113–2114 |
| R. 258 | Opinion and Order Denying Motion to Suppress 189; Denying Motion to Appoint Expert 239 (06/16/2025) | 2115–2121 |
| R. 264 | Opinion and Order Denying Motions 240, 245, 259-262 | 2138–2141 |
| R. 281 | Order Rejecting Multiple Pro Se Motions (06/26/2025) | 2394 |
| R. 282 | Order on Motions for Leave to File 275, 276; Denying Motion to Amend 280 (06/26/2025) | 2395 |
| R. 298 | Pro Se Motion for New Trial (Supplement) (07/16/2025) | 2507–2510 |
| R. 299 | Pro Se Motion for Judgment of Acquittal (07/16/2025) | |
| R. 300 | Pro Se Motion to Set Aside Judgment (07/16/2025) | 2517–2525 |
| R. 315 | Pro Se Motion to Vacate Verdict (08/07/2025) | 3476–3484 |
| R. 316 | Order Denying Motion to Appoint Counsel 310 | 3485–3486 |
| R. 318 | Transcript of Trial Vol. I (06/24/2025) | 2688-2950 |
| R. 319 | Transcript of Trial Vol. II (06/25/2025) | 2951-3203 |
| R. 320 | Transcript of Trial Vol. III (06/26/2025) | 3204-3469 |
| R. 321 | Transcript of Trial Vol. IV (Amended by ECF 322) | 3483-3495 |
| R. 324 | Pro Se Supplement re Motions 298, 299 (08/13/2025) | 3504–3508 |
| R. 325 | Pro Se Supplement re Motions 298, 299 (08/13/2025) | 3510–3525 |
| R. 327 | Order Denying Motion for Leave to File 323 (08/15/2025) | 3531 |
| R. 345 | Motion to Waive Pro Se Status for Counsel to Resume | 3601–3602 |
| R. 347 | Order Granting Motion for Counsel to Resume Representation (09/19/2025) | 3635–3636 |
| R. 353 | Order Denying Motion to Appoint Counsel 351 (10/06/2025) | 3726 |
| R. 357 | Pro Se Motion for New Trial (per Order 356) | 3737–3768 |
| R. 373 | Judgment (11/19/2025) | ___ |
| R. 376 | Notice of Appeal (11/20/2025) | 3938 |
| R. 383 | Sentencing Transcripts | 3952-4021 |