**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff-Appellee, | ) | |
| | ) | No. 25-2065 |
| v. | ) | On Appeal from the |
| SAMUEL KUHL,<br>Defendant-Appellant. | ) | United States District Court for the Western District of Michigan, No. 1:23-cr-44 |

RECEIVED
JUL 16 2026
KELLY L. STEPHENS, Clerk

**RENEWED MOTION FOR APPOINTMENT OF SUBSTITUTE APPELLATE COUNSEL,**
**OR, IN THE ALTERNATIVE, FOR LEAVE TO PROCEED PRO SE**

## I. INTRODUCTION

Defendant-Appellant Samuel Kuhl ("Appellant"), proceeding pro se, respectfully renews his motion asking this Court to either appoint substitute appellate counsel in place of current counsel, Sanford A. Schulman, or, in the alternative, to grant Appellant leave to proceed pro se on this appeal. Appellant previously raised these concerns with the Court and, when that relief was denied, timely mailed a pro se motion to proceed without counsel; that motion apparently never reached the Court and Appellant retained no copy. Appellant now renews and supplements that request, and further identifies specific, non-frivolous appellate issues that appointed counsel has failed to raise despite Appellant's repeated requests that he do so.

## II. PROCEDURAL HISTORY

Appellant represented himself pro se at trial in the district court, with standby counsel. Following the entry of judgment and the filing of the notice of appeal, standby counsel was

permitted to withdraw due to an irreconcilable breakdown in the relationship. This Court subsequently appointed Sanford A. Schulman to represent Appellant on appeal.

Appellant has never met Mr. Schulman in person and has had no meaningful opportunity to discuss the case with him directly. Correspondence between Appellant and Mr. Schulman has revealed significant disagreement over which issues should be raised on appeal, as well as multiple material misstatements of the trial record by counsel, described in detail below.

Appellant wrote to this Court requesting appointment of new counsel. That request was denied. Appellant then prepared and mailed a motion to proceed pro se on appeal. Appellant possesses a legal mail disbursement receipt confirming that this motion was mailed from his facility on June 17, 2026. The Court has indicated it never received that filing, and because it was Appellant's only copy, he was unable to timely resubmit it. Appellant respectfully submits this renewed and expanded motion to correct that gap in the record and to ensure the Court has a complete statement of the grounds for relief.

## III. ARGUMENT

### *A. A Complete Breakdown in the Attorney-Client Relationship, Combined With Counsel's Failure to Raise Multiple Non-Frivolous Issues, Warrants Appointment of Substitute Counsel.*

A criminal appellant is entitled to the effective assistance of appointed counsel, which necessarily includes counsel who communicates with the client, accurately understands and represents the record, and exercises reasoned professional judgment in selecting issues for appeal. Where, as here, the relationship between appellant and appointed counsel has broken down to the point that counsel has never met with his client, has repeatedly misstated basic facts of the case in

the appellate brief, and has declined to raise multiple issues the client has identified and requested, substitution of counsel is warranted.

***1. Counsel Has Materially Misstated the Trial Record.***

Mr. Schulman's brief contains multiple factual errors that a basic review of the record, or a single meeting with Appellant, would have avoided. Among others: (a) the brief states that all four of the charged videos underlying Count 1 were recovered from Appellant's iPhone, when in fact only one video was located on the iPhone and the remaining three were located on a separate Samsung phone; and (b) the brief misstates the length of time Appellant spent in county jail awaiting transfer to FMC Butner for competency restoration as sixty-nine days, when Appellant in fact waited from December 20, 2023 until June 17, 2024 — approximately six months — without receiving treatment despite having been found incompetent to stand trial. These are not immaterial slips; they go to the factual predicate for arguments made on Appellant's behalf, and their presence in the filed brief demonstrates that counsel has not adequately investigated or discussed the case with his client.

***2. Counsel Has Failed to Raise Multiple Non-Frivolous Issues Identified by Appellant.***

Appellant has repeatedly asked counsel to raise the following issues, each grounded in the trial record and supporting authority, and counsel has declined to do so:

(a) Duplicity. Count 1 charged a single count of violating 18 U.S.C. § 2251(a) covering four separate videos produced over a period from October 2021 through August 2022, and further combined attempted and completed exploitation within that single count. Count 2 similarly charged attempted and completed coercion and enticement under 18 U.S.C. § 2422(b) across a broad, multi-month timespan. Because the unit of prosecution for sexual exploitation offenses is

each individual depiction, and because the verdict form for Count 1 did not require the jury to unanimously agree that each specific video resulted from an act of exploitation, nor did it distinguish attempt from completion despite jury instructions charging both, Appellant's duplicity challenges — raised and preserved in pretrial motions in the district court — present a substantial appellate issue that counsel has not briefed. Multiple circuits have squarely held that the unit of prosecution for sexual exploitation offenses under § 2251(a) is each individual visual depiction, not a continuous course of conduct or a single use of the minor. See United States v. Esch, 832 F.2d 531, 541 (10th Cir. 1987) (holding that each use of a minor to create a visual depiction constitutes a separate and distinct violation of § 2251(a), and represents the correct unit of prosecution); United States v. Smith, No. 18-1109 (1st Cir. Mar. 15, 2019) (holding that the proper unit of prosecution under § 2251(a) is each video or image depicting the victim). This authority directly supports Appellant's position that Count 1's failure to require the jury to unanimously agree which depiction resulted from an act of exploitation rendered the count impermissibly duplicitous, yet counsel has not cited or briefed it.

(b) Denial of Compulsory Process. The district court orally granted Appellant's motion to call a defense forensic expert, whose report indicated that the four charged videos existed only within the SMS database of the phones at issue and had never been affirmatively saved to the photo gallery or cloud of either device. Standby counsel thereafter failed to contact the expert or facilitate his appearance despite Appellant's requests, effectively nullifying the court's ruling and depriving Appellant of testimony directly relevant to whether he sought out or stored the videos, in potential violation of his Sixth Amendment right to compulsory process.

(c) Fourth Amendment Particularity. The search warrant authorizing seizure from the Samsung phone did not particularly describe any items to be seized from that device; the seizure-

authorization portion of the warrant addressed only a co-defendant's phone and Appellant's separately-seized iPhone. The officer who executed the warrant, Officer Meredith, was not the affiant, had never reviewed the underlying affidavit, and had no independent knowledge of the facts supporting the warrant application; Officer Kroschel, the affiant, did not accompany Meredith or brief him on the warrant's factual basis before the search.

This is precisely the defect the Supreme Court addressed in Groh v. Ramirez, 540 U.S. 551 (2004). There, the Court held that a warrant which fails to particularly describe the items to be seized is "plainly invalid" on its face, id. at 557, and that an accompanying application or affidavit cannot cure that defect unless the warrant itself incorporates the supporting document by reference and the document physically accompanies the warrant at the time of the search. Id. at 557-58. The Court further held that the executing officer cannot rely on the good-faith exception to the exclusionary rule under these circumstances, because no reasonable officer could believe that a warrant which plainly failed to satisfy the particularity requirement was valid. Id. at 565. Critically, the Court reached that conclusion even though the same agent who drafted the defective warrant also led the search and personally knew what he intended to seize; the Court held that his subjective knowledge could not substitute for a warrant that, on its face, failed to authorize the search he conducted. Id. at 561, 564.

The warrant executed here presents an even stronger case for suppression than Groh. In Groh, the executing agent at least knew what he was looking for, even though the warrant itself did not say so. Here, Officer Meredith did not merely execute a facially deficient warrant — he did so without ever having reviewed the affidavit that might have told him what could lawfully be seized from the Samsung phone, and without any independent knowledge of the investigation whatsoever. If the affiant's own personal knowledge could not save the warrant in Groh, an

executing officer with no knowledge at all cannot reasonably be said to have relied on this warrant in good faith as to the Samsung phone. The seizure-authorization portion of the warrant is silent as to that device altogether — a more complete particularity failure than the one in Groh, where the application at least described the property to be seized even though the warrant form did not. Under Groh, the good-faith exception cannot rescue evidence recovered from a warrant this facially deficient, executed by an officer this uninformed.

This is not a debatable or close question on which reasonable appellate counsel might have declined to brief the issue as a matter of strategy — it is a direct, on-point application of controlling Supreme Court precedent to trial testimony that surfaced when Officer Meredith admitted, under cross-examination, that he lacked the affidavit and had no independent knowledge of the case. In evaluating claims of ineffective assistance of appellate counsel, courts ask, among other things, whether the omitted issue was "significant and obvious," whether it was clearly stronger than the issues counsel did present, and whether there was any reasonable strategic justification for omitting it. Mapes v. Coyle, 171 F.3d 408, 427-28 (6th Cir. 1999); see also Smith v. Robbins, 528 U.S. 259, 288 (2000) (recognizing that appellate counsel's failure to raise a significant and obvious issue may itself be evidence of deficient performance). The Groh violation here is at least as strong as, and arguably stronger than, several of the issues Mr. Schulman has chosen to brief, and it was squarely preserved through Appellant's oral motion to suppress at trial. Counsel's failure to raise it — like his failure to raise the other issues identified in this motion — is not the product of reasoned professional judgment; it reflects counsel's unfamiliarity with the record and his failure to meet or confer with Appellant about the case.

(d) Insufficient Evidence That Any Inducement Caused Production of a Depiction. Trial evidence and argument addressed only whether the complaining witness sent the four videos at

Appellant's request, not whether or why the videos were actually filmed. No evidence tied the act of production itself to any request or inducement by Appellant, and the witness's testimony on inducement was generic and did not identify which, if any, of the charged videos resulted from a specific request. This sufficiency challenge — distinct from, and in addition to, the inducement-sufficiency argument counsel does raise — was preserved in Appellant's Rule 29 motion and warrants appellate review.

(e) Vagueness of "Transmit" and "Live Visual Depiction" as Applied. Over Appellant's objection, the jury was instructed on a disjunctive theory permitting conviction under § 2251(a) for "producing or transmitting a live visual depiction," though no live depictions were at issue in the case and the indictment did not itself charge a transmission theory. Appellant raised this issue in post-verdict Rule 34 and Rule 33 motions, both denied by the district court, and it remains available for appellate review.

(f) Prosecutorial Misconduct in Closing Argument. During closing argument, the prosecution made statements urging the jury to view a conviction as serving a general deterrent purpose against sexual abuse of minors, and told the jury that if it were inclined to feel sympathy for anyone, it should feel sympathy for the complaining witness rather than Appellant. The prosecution further characterized Appellant's visible emotion during trial, and his wearing of jail-issued clothing, as a deliberate manipulation tactic directed at the jury. Appellant objected on the record to the prosecution's appeal to the jury's sympathy. The district court neither ruled on nor addressed the objection, did not reprimand the prosecution, and gave no curative instruction directing the jury to disregard the remarks — leaving the jury with the impression that the prosecution's conduct was sanctioned by the court. The Supreme Court has long held that a prosecutor "may strike hard blows" but "is not at liberty to strike foul ones," and that the

prosecutor's interest in a criminal prosecution "is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88 (1935). Appeals to jury sympathy untethered to the evidence, and comments disparaging a defendant's courtroom demeanor or attire as manufactured manipulation, fall outside the bounds Berger describes. Appellant raised this misconduct in his Rule 33 motion for a new trial, preserving it for appellate review, yet counsel's brief does not present it as a ground for mistrial or a new trial. This Court evaluates such claims by first asking whether the remarks were improper and, if so, whether they were flagrant enough to require reversal, weighing (1) whether the remarks tended to mislead the jury or prejudice the accused, (2) whether they were isolated or extensive, (3) whether they were deliberately or accidentally placed before the jury, and (4) the strength of the evidence against the accused. United States v. Carroll, 26 F.3d 1380, 1384-85, 1387 (6th Cir. 1994). This Court has reversed convictions where a prosecutor urged the jury to convict in order to send a message or serve a general deterrent purpose, holding that such appeals to the jury's passions rather than to the evidence violate due process. United States v. Solivan, 937 F.2d 1146, 1151-53 (6th Cir. 1991). The absence of any curative instruction here compounds the prejudice from the prosecutor's remarks, since this Court has treated the presence of a prompt curative instruction as a significant factor mitigating an otherwise improper appeal to the jury. Id.; Carroll, 26 F.3d at 1384-85. Counsel's failure to brief this issue, together with the district court's failure to give any curative instruction or to address Appellant's objection on the record, leaves unaddressed a substantial and well-supported ground for relief.

Each of these issues is grounded in the trial record, was preserved through timely objection or post-trial motion, and is at least as substantial as issues counsel has chosen to brief. Counsel's refusal to raise them, combined with his unfamiliarity with basic facts of the case and the complete

absence of any client relationship, establishes the kind of breakdown that warrants substitution of appellate counsel.

***B. In the Alternative, Appellant Should Be Granted Leave to Proceed Pro Se on Appeal.***

If the Court is not inclined to appoint substitute counsel, Appellant respectfully requests leave to proceed pro se on this appeal, as he did at trial. Appellant successfully represented himself throughout the district court proceedings, is familiar with the record, and has demonstrated through the issues identified above that he is capable of identifying and articulating substantial appellate arguments. Appellant attempted to exercise this option previously by mailing a pro se motion on June 17, 2026, as reflected in the legal mail disbursement receipt in his possession; that motion did not reach the Court through no fault of Appellant's own. Appellant renews that request here.

**IV. CONCLUSION**

For the foregoing reasons, Appellant respectfully requests that this Court appoint substitute appellate counsel to represent him in place of Sanford A. Schulman. In the alternative, Appellant requests that the Court grant him leave to proceed pro se on this appeal.

Respectfully submitted,

Samuel Kuhl

Samuel Kuhl
Defendant-Appellant, Pro Se
1728 W Bluewater Highway
Ionia, MI 48846
Register No. 731991

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below, a true and correct copy of the foregoing Motion was served on counsel for Plaintiff-Appellee and on Sanford A. Schulman by placing the same in the institutional legal mail system, first-class postage prepaid, addressed to their addresses of record.

Date: 7-15-26

Samuel Kuhl

Samuel Kuhl

RECEIVED
JUL 16 2026
KELLY L. STEPHENS, Clerk

The UPS Store Smart Label

Tracking #

1Z81910A035840 7383

From:
Samuel Kuhl 731991

THOMAS BENJAMIN KUHL
(269) 359-5103
THE UPS STORE #4830
SUITE D
5455 GULL ROAD
KALAMAZOO MI 49048-7654

1 LBS
SHP WT: 1 LBS
DATE: 15 JUL 20

**SHIP TO:**
SIXTH CIRCUIT
UNITED STATES COURT OF APPEALS
RM 503
100 E 5TH ST
CINCINNATI OH 45202-3936

OH 452 9-

UPS GROUND
TRACKING #: 1Z 819 10A 03 5840 7383

BILLING: P/P

REF #1: AJC

UNITED STATES COURT OF APPEALS
100 E 5TH ST
RM 503
CINCINNATI OH 45202

P:RED S:MR I:300

UCON-4770

1Z81910A035840 7383

25-2005
JBO