RECEIVED
JUL 30 2026
KELLY L. STEPHENS, Clerk

No. 25-2065

U.S. COURT OF APPEALS FOR THE
SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | On Appeal From The U.S. |
| Plaintiff-Appellee, | Dist. Ct. For The Western |
| v. | Dist. Of Michigan |
| SAMUEL ALEXANDER KUHL | |
| Defendant-Appellant. | Lower Ct No. 1:23-cr-44 |

MOTION TO PROCEED PRO SE IF NO NEW LAWYER IS APPOINTED.

I, Samuel Kuhl, respectfully request to proceed pro se in light of this Honorable Court's refusal to replace my current appellate counsel, Sanford Schulman, despite the complete lack of communication between Schulman and I, and Schulman's clear carelessness and ineffectiveness in approaching this appeal.

I disagree with the Court's finding that good cause did not exist to remove Mr. Schulman. This finding is based on this Court's determination that my "dissatisfaction with Schulman is not justified." (Page 2 of Order Denying My Motion for New Counsel). This Court explained its determination was based on the fact that Schulman provided me with the district court transcripts, a brief raising ten issues (many of which were allegedly requested by me), and I attempted to terminate Schulman in advance of a scheduled video meeting. Id.

This Court also held that Schulman's failure to confer with me prior to filing the brief in this matter does not warrant

substitution of counsel, because Schulman is not required to seek my approval, and it does not matter if I agree with the brief. (Page 2-3 of Order Denying My Motion For New Counsel).

Several issues are conveniently ignored by the Court in its reasoning for denying substitution of Schulman.

I. THE TRANSCRIPTS WERE NOT PROVIDED UNTIL AFTER SCHULMAN COMPLETED THE BRIEF; ONLY THE TRIAL AND SENTENCING TRANSCRIPTS WERE PROVIDED.

The Court fails to recognize that Schulman did not provide the entirety of the district court transcripts. Schulman only provided the trial and sentencing transcripts. While Schulman initially wrote to me asking for my input on issues to address on appeal, and whether I wanted the lower court transcripts, he did not provide these transcripts so I could effectively provide me input. Schulman initially wrote me this letter in late December 2025 or early January of this year, however, I was not provided any transcripts until early April. Moreover, these transcripts did not consist of any proceeding preceding trial.

II. THE INACCURACIES IN THE BRIEF ARE CLEAR AND EXISTENT, NOT MERELY PERCEIVED.

This Court states that my reply to Schulman's response to my motion for new counsel "largely complains about perceived inaccuracies in the brief." (Page 2 of Order Denying My Motion For New Counsel) However, the inaccuracies identified in my reply (as well as others I will identify now) are not merely perceived to be materially inaccurate but truly are.

A. Issue "X" Is Only Partially Preserved In That The District Court Did Not Rule On The Traffic Stop.

Despite Schulman's assertion that a "district court's legal conclusions regarding the Fourth Amendment" are subject to de novo review, that is not true as to issues not properly preserved. Because the District Court did not rule on the merits of any argument concerning the traffic stop in Wyoming, MI, this issue is not preserved. Thus, contrary to Schulman's asserted Standard of Review, issues not preserved for appeal are reviewed for plain error. See U.S. v. Gordon, 493 Fed. App'x. 617, 622 (6th Cir. Aug. 1, 2012).

Clearly this is something that the Government will likely argue, and it is reckless and incompetent for Schulman to not address this issue. Indeed, the burden of meeting a plain error standard is higher than that of de novo.

## B. Statement Of The Case Incorrectly States That The Word "Coerce" Was In Count 1 Of The Initial Indictment.

On page "xi" of the brief, Schulman incorrectly states that Count 1 of the original indictment "alleges that... Mr. Kuhl employed, used, persuaded, induced, enticed, and coerced" S.D. to engage in sexually explicit conduct for the purpose of producing visual depictions. However, the first sentence of Count 1 in the original indictment does not contain the word "Coerce." Nor does the second sentence. In fact, the second sentence of Count 1 in the original indictment specifically alleges that I only "used" S.D.

This is material because the term "used" is not applicable to receipt of visual depictions - even assuming such depictions were requested - in the context of 18 USC §2251(a). This is especially so in light of the Sixth Circuit Pattern Jury Instruction's definition of "used" in regards to 18 USC §2251(a).

By failing to acknowledge this fact, and actually state something to the contrary, Schulman again displays carelessness and recklessness, as well as incompetence. Moreover, Schulman fails to realize that this makes Count 1 of the original indictment fatally defective,

an issue that I did preserve. This is material, because if the original indictment was invalid and required to be dismissed, the pretrial motion deadline would have had to be reset. Additionally, the government would not have been permitted to choose between prosecuting either the original or superseding indictment - as the district allowed - and thus narrowed down whether I had to defend against the alleged production of photographs or videos.

C. The Brief's Statement Of The Case Fails To Recognize That Count 2 Of The Original Indictment Charged Both A Completed And Attempted Offense.

On page "xi" of the brief, the Statement Of The Case asserts that Count 2 of the original indictment "charged Coercion and Enticement of a Minor." However, Schulman fails to recognize that this Count also charged Attempted Coercion and Enticement.

This is material because the government was able to present excessive evidence outside specific relationship to a specific completed or attempted offense under 18 USC § 2422(b). This allowed for a suprise midtrial amendment of the verdict form, which prejudiced me by forcing me to try restrategizing my defense midtrial. This excessive evidence also prejudiced me because it inflamed the jury and made them rely on unsupported inferences

in finding that the August 24, 2022 date of Count 2 involved the use of phone or internet. This is apparent from the jury question presented during deliberation and the district court's contested response.

Clearly this constitutes duplicity, and deprived me of Sixth Amendment rights to be informed of what I must defend against, a fair trial, and a unanimous verdict.

D. The Brief's Statement Of The Case Fails To Recognize That Count 1 Of The Superseding Indictment Added An Attempted Offense.

On page "xi" of the brief, Schulman vaguely states that the Superseding Indictment contained the same two counts. Schulman does not mention the material fact that Count 1 of the Superseding Indictment alleged an attempted violation and a completed violation of 18 U.S.C §2251(a).

This is key because there was no specific request by me, presented at trial, that resulted in the receipt or production of a video in violation of 18 USC §2251(a). The only specific request concerning anything nude in nature was the comment I made to S.D. on Facebook, "send a pic or something lol," on or about May 8, 2021. However, no picture or video was sent in response to this

comment. Moreover, while this comment was made in reference to S.D stating she was going to take a shower, there was no suggestion to engage in any sexually explicit conduct.

Accordingly, some jurors may have found this constituted an attempted offense while others did not. The lack of attempted offense specification in the verdict form as to Count 1, but the general instruction that both Counts charged completed and attempted offenses, only compounded this issue concerning a unanimous verdict, and a fair trial, and notice of what I had to defend.

The only other comment presented in evidence related to 18 USC §2251(a), made by me, was "mann, girl send em," which was in response to S.D.'s suggestion that she could send pics to get me hard. This occurred on or about October 30, 2021, but no pictures or videos were presented at trial as being sent or produced in response to this exchange.

Again, at the minimum this may have been seen as an attempt by some jurors, but not by others. However, the verdict form did not specify any attempt offense or even ask the jurors to reach a verdict on such, despite the ambiguous instructions concerning the charges of Count 1.

E. The Brief's Statement Of The Case Incorrectly States That I Did Not Receive Transfer Or Restoration Treatment After Court Order For 69 Days.

On page "xii" of the brief, it says that I sat in Newaygo for 69 days after the December 20, 2023 district court order committing me for restoration. This is incorrect as I truly stayed in the jail until June 17, 2024, when I was finally transported to FMC Butner.

This inaccuracy further illustrates Schulman's carelessness and lack of attention to this case. Not only that, but this delay becomes key in arguing that the district erred by refusing to extend my pretrial motion deadline. Indeed, the district court justified denying the extension due to the amount of time the case had been ongoing, but the majority of that delay was caused by the government's failure to timely transport me to and from FMC-Butner.

Because the majority of the time passage considered by the Court to deny extending the motion deadline was the government's fault, it was an abuse of discretion to deprive me of meaningful pretrial litigation on such basis. While Schulman does argue that the denial of my

request to extend the pretrial motion deadline is reversible error, he fails to incorporate this key fact into that argument.

Additionally, this inaccuracy as to the delay in treatment becomes key to any argument regarding due process and IDRA violations, which Schulman briefly discusses on pages 37-38 of the brief. (Citing U.S. v. Baker, 807 F.2d 1315 (6th Cir. 1986)).

F. The Case Cited To Establish The Standard Of Review For Issue "X" On Page "xi" Of the Brief Does Not Exist.

Schulman asserts that the "procedural dismissal of a suppression motion is reviewed for abuse of discretion," and cites U.S. v Gaitan, 171 F. App'x 523, 527 (6th Cir. 2006). The issue is that no such case even exists. This is another prime example of Schulman's carelessness and incompetence.

G. Schulman Fails To Address The Fact That I Orally Moved To Represent Myself On Feb. 12, 2025.

On page "xiii," Schulman states that I filed a formal Motion to Proceed Pro Se on February 19, 2025. However, Schulman does not mention the fact that I orally moved

to represent myself on February 12, 2025 - the earliest point I could do so.

This fact becomes key in effectively arguing that the district court deprived me of my right to self-representation by setting the pretrial motion deadline for March 5, 2025. The district court set this deadline knowing that I was seeking to represent myself and could not file any pretrial motions myself while represented by counsel. The fact that I diligently moved to represent myself, and the district court knew of my intention to do so, supports the argument that the district court abused its discretion and deprived me of my right to self-representation.

By failing to highlight this key fact, Schulman again displays carelessness and incompetence.

H. The Statement Of Facts Muddles The Distinction Between The Federal Search Warrants For Cell Phones And Facebook.

On page 1 of the brief, Schulman states that FBI Special Agent Jeff Buttery obtained a federal search warrant for 2 phones belonging to me on January 25, 2023. Schulman then contends that in that search warrant's affidavit SA Buttery discloses that he had previously obtained a warrant for the same Facebook User ID. However, Schulman is confusing the

phone search warrant of January 25, 2023 with the Facebook search warrant of February 8, 2023.

Truly, it is in the Facebook warrant of Feb. 8, 2023, that SA Buttery mentions reviewing a previous seizure of the same subject Facebook's data before obtaining the Feb. 8, 2023 Facebook warrant. The Facebook data was previously seized under a federal search warrant for fraud that was issued almost a year prior on March 8, 2022.

Furthermore, the phone search warrant of Jan. 25, 2023 sought to search two phones whose data was previously seized under a federal search warrant in relation to a fraud investigation that was issued on June 29, 2022.

Schulman's failure to recognize and clearly state these key distinctions further displays his carelessness and recklessness. This becomes even more concerning when analyzing arguments for suppression, because SA Buttery admits that the conversations between S.D. and I were not relevant to the fraud investigation. However, the FBI retained this data for 11 months (in respect to Facebook) and 7 months (in respect to the iPhone identified in the Jan. 25, 2023 warrant). Indeed, the government did not conduct a new examination of the iPhone under the Jan. 25, 2023 warrant, or of the Facebook under the

Feb. 8, 2023 warrant. Instead, they simply reviewed the data seized under the prior March and June 2022 fraud search warrants.

Retaining nonresponsive data for so long is an unreasonable seizure in violation of the Fourth Amendment. This conduct also violates due process and Fed R. Crim. P. 41.

I. Schulman Fails To Realize That The Forfeiture Portion Of The Indictment Was Not Sufficient In Light Of The Circumstances And Language Of The Charges.

The original indictment charged a timeframe of May 13, 2021 to October 31, 2021. However, the evidence provided in discovery implicated the Samsung phone seized by Wyoming Police on October 13, 2022. This caused confusion because I know that I did not have this Samsung phone at all in 2021, and the Forfeiture Notice did not identify the iPhone or Samsung by its model type or date of seizure, nor the seizing agency. The Forfeiture Notice did not identify the phone number associated with either phone, but only gave the phones' serial numbers.

Because the Wyoming Police seized an iPhone and Samsung phone on October 13, 2022, I was initially under the belief that the indictment meant to charge a similar timeframe in 2022, and that both phones mentioned in

the indictment were those seized on October 13, 2022.

An alternative theory was that the FBI was referencing one of the phones seized on November 3, 2022 in Kalamazoo. Indeed, I was only provided the October 14, 2022 Wyoming Search Warrant, the February 8, 2023 Federal Facebook Search Warrant, and the November 9, 2022 MSP Search Warrant during initial discovery. Therefore, I was not able to identify what phones the indictment referenced. I only figured this out after the pretrial motion deadline had passed, and the superseding indictment was issued.

All of this becomes material when considering the district court's denial of my request to extend the pretrial motion deadline. Schulman's failure to communicate with me has made it impossible to clarify this matter.

J. Schulman Fails To Illustrate And Present The Fact That The Ruling That The Government Must Prove That I Knew S.D. Was Under The Age Of 16 Led To An Unfair And Prejudicial Switch In The Government's Asserted Dates Of Offense For Count 2.

On page 2 of the brief in section "E. Trial Proceedings and Verdict," Schulman references the knowledge of age ruling as to 18 USC §2422(b). However,

Schulman omits the material fact that the government amended its theory and date of offense as to Count 2, midtrial, in order to fit better with this knowledge of age requirement.

This prejudiced me because I had prepared my defense for Count 2 based on the June 1, 2021 and August 24, 2022 dates of the verdict form. On June 1, 2021, the evidence clearly showed that I believed S.D. to be 17-years old. Thus, I could not KNOWINGLY persuade her to engage in illegal sexual activity, because it is not illegal to have sex with a 17-year old in Michigan - unless you are a teacher or caregiver or coach or something like that. Accordingly, I had a valid defense as to the original date of June 1, 2021 for Count 2.

Due to the fact no messages or other evidence tying the use of phone or internet to the second alleged date of Count 2 - August 24, 2022 - I had a defense that I did not use a supposed means or facility of interstate commerce to orchestrate - let alone persuade - S.D. to engage in illegal sexual activity.

This midtrial surprise was a result of the duplicit nature of Count 2, from its excessively broad timeframe to its multiple alleged offenses. This tactic by the government also constitutes misconduct, which when considered alongside the

other instances of misconduct, warrants vacation of my conviction.

K. Section "E. Trial Proceedings and Verdict" Fails To Mention The Valid Oral Motion To Suppress Evidence From The Samsung Due To Meredith's Execution Of The Wyoming Search Warrant Without The Affidavit Or Knowledge Of The Underlying Facts.

During cross-examination of Sgt. Robert Meredith, it is disclosed that the Wyoming Search Warrant of October 14, 2022 was executed without a review or even presence of the affidavit. Meredith further testified that the Search Warrant identified me as the owner of the Samsung which is not true. Fatally, the warrant did not particularly state that anything could be seized from the Samsung phone, nor, that if such seizure could occur, what could particularly be seized. This violates the Fourth Amendment.

This clearly runs afoul of the Supreme Court ruling in Groh v. Ramirez. Moreover, this case is distinct from Baranski v. Fifteen BATF Agents, because Meredith was not the affiant, and Kroschel was not present during the search. Meredith extracted the Samsung's data and reviewed it, then seized that data and turned it over to the Michigan State Police. This seizure of data from the Samsung was not authorized by the search warrant, and everything

in this case stems from that unconstitutional seizure. Thus, every piece of evidence is tainted and derives from fruit of the poisonous tree and must be suppressed.

I preserved this argument despite continued interruption by the district court. See ECF No. 320, PageID. 3212-3215. Specifically in Volume 3 of Trial Transcript on page 525 (PageID 3212) lines 19-22, I argue that the warrant did not state I was the Samsung owner, but only that the Samsung was collected from vehicle and not identified in the seizure section of the warrant. I continued this argument on page 527 of Volume 3 (PageID 3214) lines 1-4.

Schulman fails to acknowledge this key preservation, which further illustrates his incompetence. I furthered this argument during my post-verdict motions stating that Meredith lacked any guidance in executing the search without the affidavit, and even the affidavit did not particularly describe the Samsung in the seizure section, nor what could be seized from the Samsung. I do not have these motions so I cannot cite to any specific portion. I only recently learned of the Groh v. Ramirez case and did not realize the full merit of this specific particularity / guidance of execution / lack of affiant presence and absence of affidavit argument. Accordingly, this argument must be raised on appeal.

L. Schulman Incorrectly States That A Facebook Message Exchange Shows That In September 2021 I Say "Wait, so you're 15?"

This was truly text messages from the iPhone and not Facebook. In fact, the variation of the government's case at trial negated the accusation that I used Facebook to commit the charged offenses. All Facebook messages ceased in late June or early July of 2021, long before the first video of October 27, 2021 and S.D.'s statement in September of 2021 ~~at~~ that she was not 17 or 16. This variation, along with the midtrial change of date for Count 2, the lack of attempt specification for Count 1 during argument and verdict form, and the government's closing argument and rebuttal where ~~they~~ the prosecutor states I coerced S.D. to send videos by basically making her feel insecure, and leading her to believe she would lose me. However, the term coercion is not present in Count 1 of the Superseding Indictment.

Schulman's failure to recognize these clear and key details further displays his carelessness and incompetence.

M. Schulman Incorrectly States That All Four Videos Relevant To Count 1 Were Extracted ~~Fr~~ From My iPhone 12 Pro Max.

Section "C. The Charged Visual Depictions" of the Statement of Facts incorrectly states that all 4 videos (Gov. Exs. 20-23) were extracted from my iPhone 12 Pro Max. However, only one video (Ex. 20) was extracted from the iPhone; the other 3 were extracted from the Samsung phone seized by Wyoming Police.

Again, this error illustrates Mr. Schulman's carelessness and incompetence.

N. Schulman Did Not Meet With Me Or Otherwise Move To Obtain The 2021 KDPS Search Warrants, Which Data Seized Under Such Warrants Were Used In The Affidavits To Obtain The Federal Search Warrants of March 8, 2022 and/or June 29, 2022.

On page 10 of the brief, Schulman mentions the government's failure to provide KDPS Search Warrants issued in 2020 and executed in 2021. Information obtained from one or both of these KDPS warrants were referenced in SA Buttery's affidavit for the federal fraud search warrants in 2022. I cannot remember whether it was the phone search warrant of June 29, 2022 or the Facebook warrant of March 8, 2022, but one, or both, contain a picture seized under the referenced KDPS warrant. This picture shows a document allegedly related to fraud.

The affidavits for one or both of these 2022 federal warrants also describe specific information seized from other phones under the KDPS search warrants.

The issue is that one KDPS warrant, issued on 11-29-2020, was authorizing search of my phone related to a shooting and death of a man. It did not reference anything to do with fraud. The other warrant issued to KDPS on 12-17-2020 did not identify any criminal activity to seize evidence of from the electronic devices searched. The warrant does not mention any crime at all or even general criminal activity. It simply states that any and all data of the electronic devices at issue can be searched without a reference as to what for or what is to be seized. This data seized under the KDPS warrants is tainted and therefore, cannot be used to obtain further search warrants.

Because SA Buttery used this unlawfully obtained evidence to obtain the federal fraud search warrants, all evidence obtained under such warrants is fruit of the poisonous tree. If Buttery did not unlawfully have this data, he could never have reexamined it to search for communications between S.D. and I. Indeed, MSP Det. Gensterblum told SA Buttery that S.D. and I began conversing in 2022, so there was no probable cause to search the iPhone seized in November

of 2021 in relation to any sex offenses.

In order to effectively argue this point, Schulman should have attached the fatally defective KDPS warrants to the brief, as well as the federal affidavits to show how they exploited the unlawfully obtained evidence. Schulman's failure to do this only compounds his carelessness and incompetence.

O. Schulman Fails To Recognize That I Also Challenged The Lawfulness Of My Arrest By Wyoming Police On October 13, 2022.

In Section "N. Procedural Dismissal Of Suppression Motions" on page 16 of the brief, Schulman does not mention my arrest on October 13, 2022 as being one of the legal issues not addressed by the district court.

Because my arrest was not based on probable cause, Schulman's error to specify this argument as one also ignored by the district court is irrational and prejudicial.

P. Schulman Incorrectly States That The District Court Denied My Reply Brief, Brady / Giglio Motion, Standby Counsel Objection, and Related Motions On June 17, 2025, The Day Before Trial.

Trial began on June 24, 2025, so it is impossible for June 17, 2025 to be the day before trial. While this may seem harmless, it only compounds Schulman's carelessness and incompetence.

Q. Schulman Fails To Address Mr. Graham's Refusal To Contact Defense Forensic Expert Adam Kelly To Testify Despite My Numerous Requests.

In Section "V. Trial Proceedings and Verdict" on page 20 of the brief, Schulman states that the district court granted my motion regarding expert testimony. However, Schulman does not mention Mr. Graham's preventing of me contacting Mr Kelly to testify.

This is key because it violates my right to compel favorable witnesses under the Sixth Amendment. Indeed, Mr. Kelly found that I took no action to store any of the 4 videos underlying Count 1, but they were only present in text as attachments. This expert testimony directly contradicts Count 1's allegation that I received <u>and stored</u> the videos. This expert testimony also negates the argument that I asked for the videos, because if I was so interested, I would've stored at least one of the videos. However, I stored none.

If Schulman had taken the time to meet me, he

would've known these material details and framed arguments accordingly. This conduct by Mr. Graham deprived me of my pro se right and compulsion Clause under the Sixth Amendment.

R. Schulman Does Not Mention Kroschel's Omission Of Material Facts From The Wyoming Search Warrant Affidavit, Which Had They Been Included Would've Negated Probable Cause.

Schulman never once mentions Kroschel's omission of material facts from her Affidavit. An issue I raised vigorously in one of my suppression motions (either ECF No. 188, 189, or 190). Looking to that motion, this Court will see a collaboration of material facts that Kroschel omitted from her Affidavit.

By not also incorporating this issue into the argument regarding suppression of the Samsung phone & its data, Schulman again displays carelessness and incompetence.

S. Schulman Does Not Argue Prosecutorial Misconduct Based On The Government's closing Argument And Rebuttal.

The Government told the jury to draw on sympathy for S.D. if they were to feel sympathy at all. This is against my rights to Due Process and a Fair Trial, under the 5th & 6th Amends. No direction from the district court was given as to this improper conduct, inferring to the jury that this comment was proper and supported by the court. This goes against Supreme Court case of Berger where it was held that general instructions are not enough in these circumstances, and such prosecutorial misconduct must be directly rebuked. Indeed, the government is held to a higher standard when prosecuting their case.

Then, the Government went on to draw on general safety of children and argue that convicting me would protect the children of our nation, and jurors' children. This is against clearly established law. U.S. v. Solivan, 937 F. 2d 1146, 1153 (6th Cir. 1991)

Furthermore, the Government did not attack the substance of my defensive arguments as to contradicted facts or evidence, but instead went on to attack the integrity and authenticity of me and my emotions to call my defense a manipulation and plea for sympathy. The prosecutor went so far as to speak on my jail attire. I challenged all of these issues in my post-verdict motions.

Because I objected to at least the sympathy statement, the evidence was not overwhelming, and the judge did not cure these improprieties through a direct, specific admonishment to the jury, reversal of my conviction is warranted. U.S. v. Warshak, 631 F. 3d 266, 301-302 (6th Cir. 2010); see also U.S. v. Galloway, 316 F. 3d 624, 632 (6th Cir. 2003)

Moreover, the prosecutor injected testimony, obtained under leading questions that I objected to and objections were sustained, during closing and rebuttal. Specifically, one instance, the prosecutor said that S.D. said she felt like she may be losing me or in fear of losing me so she sent some of the videos. The government said this is coercion as to Count I. However, this was predicated upon a question I objected to and the district court sustained. When VerHey first asked S.D. why she sent there videos, S.D. said because that's what people do sometimes in relationships. Then, Verhey tried to ask if one reason was because S.D. felt like she may lose me, I objected to this

question as leading and the district court sustained. However, S.D. went on to still say something like "yea you could say that." Injecting this testimony that the prosecutor knew was improper, only compounds the misconduct here.

Schulman again displays careless & recklessness by not addressing these clear and flagrant improprieties.

## III. SCHULMAN DID NOT PUT FORTH ANY EFFORT TO TIMELY MEET WITH ME, DESPITE MY TELLING HIM HOW TO GET A PRIVILEGED VIDEO CALL.

The visit Schulman speaks of being scheduled, before I asked him to withdraw would never have occurred first and foremost. This is because the video visit machine in my housing unit was out of order at the time.

Not only that, but it was scheduled for a day that was not even a week before my appeal brief was due. Moreover, it was only 20 minutes and would have been in the housing unit hallway with 200 prisoners walking past being loud. It would also have been recorded and monitored.

I told Schulman early on in December or January to ask this Court to order that he be allowed a private video visit with me, because that is what John Zevalking, my state appeal lawyer did. However, Schulman ignored.

This again shows Schulman's lack of care and time for this case.

# RELIEF REQUESTED

I humbly plead with this Court to appoint a new lawyer who will actually give time and attention to this appeal. If this relief is denied, I request to proceed pro se knowingly and voluntarily.

6-17-2026

Respectfully,

S. Kuhl

S. Kuhl 731991
1728 W. Bluewater Hwy.
Ionia, MI 48846

S. Kuhl 731991
1728 W. Bluewater Highway
Ionia, MI 48446

RECEIVED
JU 30 2026
KELLY L. STEPHENS, Clerk

U.S. 6th Circuit Cour
100 East Fifth Street,
Cincinnati, OH 45202

LEGAL MAIL