RECEIVED
JUL 30 2026
KELLY L. STEPHENS, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v. No. 25-2065

SAMUEL ALEXANDER KUHL,
Defendant-Appellant.

# APPELLANT'S REPLY IN SUPPORT OF MOTION FOR SUBSTITUTE APPELLATE COUNSEL OR, IN THE ALTERNATIVE, LEAVE TO PROCEED PRO SE

Defendant-Appellant Samuel Alexander Kuhl, appearing pro se, respectfully submits this reply in support of his motion for substitute appellate counsel or, in the alternative, leave to proceed pro se on appeal.

## I. INTRODUCTION

Appointed counsel Sanford A. Schulman has filed a response conceding that three issues omitted from his original appellate brief should in fact be raised, and has submitted a proposed supplemental brief addressing them. Mr. Kuhl welcomes counsel's concession as far as it goes. But counsel's response confirms, rather than resolves, the underlying problem that prompted this motion: counsel continues to prepare filings without adequately communicating with Mr. Kuhl about the record, and as a direct result, the proposed supplemental brief still omits material procedural history bearing on one of the very issues counsel now concedes should be raised.

## II. THE PROPOSED SUPPLEMENTAL BRIEF OMITS THE PRESERVATION HISTORY OF THE SAMSUNG SEIZURE-AUTHORIZATION ISSUE

Among the issues counsel now concedes is the argument that Officer Meredith executed the search warrant without the underlying affidavit and lacked authorization to seize the Samsung phone's data, which was never particularly described in the warrant's seizure-authorization section. Counsel's proposed brief treats this issue as though it first arose during trial, when the particularity problem became apparent through Meredith's testimony.

That account is incomplete. Mr. Kuhl in fact challenged this issue before trial, in a pretrial motion to suppress docketed at approximately ECF No. 188, 189, or 190 and filed in May 2025. The district court did not reach the merits of that argument. Instead, the court ruled the motion untimely and overlength, and declined to address it.

This argument should also be sharpened in one respect. The warrant did list the Samsung phone in its search-authorization portion, and the device itself was physically seized. But the warrant's seizure-authorization section never authorized seizure of the Samsung's data specifically. That distinction has practical significance here: at the time of the physical seizure, the Samsung was powered off and screen-locked, meaning its data was not actually accessed or seized in any functional sense at that time. The data was only extracted later, pursuant to forensic examination, with no warrant authorization describing what data could be seized from that device. The issue is thus not merely that the warrant lacked particularity as to the Samsung in general, but specifically that it never authorized seizure of the Samsung's data at all.

This procedural history matters. Whether an issue was preserved below affects the standard of review this Court applies on appeal. An argument raised pretrial, but never reached on the merits due to a timeliness ruling that was itself the product of a scheduling conflict not of Mr. Kuhl's making, stands on different footing than an argument raised for the first time at trial.

Omitting this history from the supplemental brief risks the argument being reviewed under a more deferential standard than it warrants, or being treated as unpreserved altogether.

Mr. Kuhl does not currently have a copy of the May suppression motion in his possession and cannot confirm its exact docket number. He respectfully requests that this history be confirmed against the district court docket and reflected in any brief filed on his behalf, or, in the alternative, that he be granted leave to file a pro se supplemental brief addressing this preservation issue directly.

## III. SCHULMAN HAS NOT RAISED THE MATERIAL OMISSIONS IN THE KROSCHEL AFFIDAVIT OR THE DENIAL OF A FRANKS HEARING

Counsel's proposed supplemental brief challenges the warrant only on the bare-bones-affidavit ground, and now adds the particularity/seizure-authorization argument addressed above. Both of those arguments were raised by Mr. Kuhl himself. But counsel has not raised a related and independent issue that Mr. Kuhl also preserved in his May 2025 pretrial suppression motion: that the affidavit supporting the warrant, sworn by Detective April Kroschel, omitted material facts, and that the district court never held a hearing on the merits of that claim under Franks v. Delaware, 438 U.S. 154 (1978).

Mr. Kuhl's suppression motion identified six material omissions from the Kroschel affidavit:

1. The marijuana and scale were located in the driver's door cubby and under the driver's seat, while Mr. Kuhl was the sole passenger, seated in the back on the passenger side.
2. Coleman claimed ownership of the marijuana and scale.
3. Coleman's mother was the registered owner of the vehicle.

4. One of the ten debit cards found in Mr. Kuhl's possession bore his own last name, creating a possibility that he had the cards of family and friends — a possibility strengthened by omission number 6, below.

5. The prosecution had already declined to press marijuana charges against Mr. Kuhl before Kroschel applied for the search warrant.

6. The arresting officer ran all ten card names through a database and obtained negative results — no reported crime or fraud — for every name.

As with the other issues addressed above, the district court did not reach the merits of this argument. The suppression motion raising it was denied as untimely and overlength, and no Franks hearing was ever held. This omission-of-material-facts argument, and the denial of a Franks hearing on it, is independent of the bare-bones-affidavit and particularity arguments counsel has raised, and should be included in the supplemental brief along with them.

## IV. SECTION F OF THE WARRANT LACKS ANY LIMITATION TO THE CRIMINAL ACTIVITY DESCRIBED IN THE AFFIDAVIT

Mr. Kuhl also preserved, in his May 2025 pretrial suppression motion, a distinct particularity defect in the warrant itself, one that counsel's proposed brief does not address. The warrant's seizure-authorization section is broken into lettered items. Items C, D, and E each follow the same structure: they describe a category of evidence and then state that the category is "related to the above-described criminal activity and further described in the affidavit... which is attached hereto and entirely incorporated herein by reference." Item F, by contrast, reads simply: "Text messages (SMS), multimedia messages (MMS), recorded messages and subscriber information modules [SIM cards]," with no limiting language at all. It is not described as related to the above-described criminal activity, and it does not incorporate the affidavit. Item F is where the text-message communications between Mr. Kuhl and SD were discovered.

This omission is significant, not incidental. Where a warrant repeats identical qualifying language across several consecutive, parallel items and conspicuously omits that same language from another, the omission is properly read as deliberate rather than as an oversight; treating it as accidental would render the repeated limiting language in C, D, and E mere surplusage, which courts construing a warrant as a whole should not do. Read on its face, Item F authorizes seizure of all text messages, multimedia messages, and related data from any of the three phones, without any tie to the marijuana or financial-transaction-device evidence that the warrant's other items describe. That is not merely an overbroad item; it is a general-warrant defect, the precise evil the Fourth Amendment's particularity requirement was designed to prevent. See Coolidge v. New Hampshire, 403 U.S. 443 (1971); Stanford v. Texas, 379 U.S. 476 (1965).

This argument stands independently of the Samsung-specific seizure-authorization argument addressed above. It does not turn on which of the three phones the SD communications came from, or on whether that phone was separately named in the seizure-authorization section, because the defect lies in the text-message item itself. It also should be distinguished from the catch-all clause upheld in Andresen v. Maryland, 427 U.S. 463 (1976): there, the catch-all followed a lengthy, specific list of described documents within the same clause, and the surrounding context supplied the limitation. Here, Item F stands apart from Items C, D, and E, which demonstrate that the warrant's drafter knew precisely how to write a limiting clause and simply did not do so for Item F. As with the other issues raised in this reply, this argument was preserved in the May 2025 suppression motion and was never reached on the merits, having been denied as untimely and overlength.

## V. SCHULMAN HAS NOT CHALLENGED THE LAWFULNESS OF MR. KUHL'S ARREST AT THE TRAFFIC STOP

Counsel's proposed brief also does not challenge the lawfulness of Mr. Kuhl's arrest at the traffic stop, an issue Mr. Kuhl likewise preserved in his May 2025 pretrial suppression motion. The marijuana and scale that formed the stated basis for the stop's escalation were found in the driver's door cubby and under the driver's seat, areas associated with Coleman, the driver, rather than with Mr. Kuhl, who was seated in the back on the passenger side. Mr. Kuhl contends that, given the location of the marijuana relative to his own location in the vehicle, there was no probable cause to arrest him individually.

Mr. Kuhl further contends that he was arrested only after he exercised his right not to identify himself, after being told by police that he was not required to provide his identity. Taken together, Mr. Kuhl argues these facts support both a lack-of-probable-cause challenge to the arrest and a retaliatory-arrest argument based on his exercise of that right. As with the other issues raised in this reply, this argument was preserved in the May 2025 suppression motion and was never reached on the merits, having been denied as untimely and overlength.

## VI. THE VERDICT-FORM UNANIMITY ISSUE FOR COUNT 1 HAS A FACTUAL HISTORY THAT COUNSEL DOES NOT KNOW

Counsel also now concedes that the Count 1 verdict form's failure to require unanimous jury agreement that each specific video was a product of exploitation, rather than merely sexually explicit, should be raised on appeal. Mr. Kuhl agrees this issue is well taken, but again notes that counsel's brief is missing a material piece of the record: this issue was actually raised at trial and rejected by Mr. Kuhl's own trial counsel.

Mr. Kuhl had waived his pro se status mid-trial and was represented by trial counsel at the time. Before the verdict form was submitted to the jury, Mr. Kuhl specifically requested that trial counsel seek to amend the verdict form to require the jury to unanimously agree that each of the four charged videos was itself the product of an act of exploitation, not merely that each

depicted sexually explicit conduct. Trial counsel refused to make that request, telling Mr. Kuhl that it did not matter whether the jury found each video to be a product of exploitation, so long as the jury found that Mr. Kuhl exploited the minor at some point during the charged period of May 2021 through August 2022.

This is significant for two reasons. First, it shows that the unanimity problem in the verdict form was not merely an oversight that went unnoticed at trial; it was specifically identified by Mr. Kuhl and affirmatively rejected by trial counsel, who applied precisely the legal theory that made the verdict form defective. Second, because Mr. Kuhl was represented by trial counsel and had waived pro se status at that point, this history could not have been discovered from the trial transcript alone, and was not something Schulman would have known absent direct communication with Mr. Kuhl. Counsel's supplemental brief should reflect this history, both to strengthen the preservation and prejudice analysis for this issue and because it further illustrates that the errors below were the product of specific, identifiable decisions, not incidental oversights.

## VII. ADDITIONAL PROSECUTORIAL MISCONDUCT: THE COERCION THEORY RESTED ON TESTIMONY DRAWN OUT BY A SUSTAINED-OBJECTION LEADING QUESTION

Counsel's proposed brief raises prosecutorial misconduct as to the prosecutor's comments about Mr. Kuhl's jail attire and appeals to jury sympathy for SD. Mr. Kuhl asks that a related instance of misconduct be added to that argument. Although the word "coerce" did not appear in the indictment, the prosecutor argued at trial that Mr. Kuhl coerced SD into sending the videos, on a theory that Mr. Kuhl's treatment of SD made her feel insecure and fearful of losing him, causing her to send the videos to keep him happy.

That theory rested on a single piece of testimony obtained through a leading question. The prosecutor asked SD, "Is one of the reasons you sent these videos because you felt like you were losing Mr. Kuhl and wanted to keep him happy?" Mr. Kuhl objected to the question as leading, and the objection was sustained. SD nonetheless answered, "Yeah, you could say that." Despite the sustained objection, the prosecutor went on to reference this same question and answer again later in the proceedings, relying on it to argue the coercion theory to the jury. Mr. Kuhl submits that a prosecutor's continued reliance on testimony produced by a question the court had already ruled improper is itself a form of misconduct, and should be raised alongside the other prosecutorial-misconduct arguments counsel has conceded.

## VIII. THESE OMISSIONS ILLUSTRATE THE COMMUNICATION BREAKDOWN UNDERLYING MR. KUHL'S MOTION

Mr. Kuhl raises these matters not merely to correct the record on two issues, but because both illustrate precisely the problem his underlying motion describes. Counsel was appointed to represent Mr. Kuhl on appeal but has never met or spoken with him directly. Had counsel adequately communicated with Mr. Kuhl before filing the proposed supplemental brief, both the Samsung preservation history and the trial counsel's refusal regarding the verdict form would have been available to include. Their absence is not a minor drafting gap; it is a direct consequence of counsel continuing to prepare Mr. Kuhl's appeal without his meaningful participation, the same concern that led Mr. Kuhl to seek substitute counsel or pro se status in the first place.

## IX. CONCLUSION

Mr. Kuhl did not raise all of these additional issues in his original renewed motion because he prioritized getting that motion filed quickly. His prior pro se motion, mailed to this Court on June 17, 2026, did not reach the Court despite being properly mailed, and Mr. Kuhl wanted to

ensure a motion was on file without further delay. He accordingly raises the remaining issues now, at the first opportunity following counsel's response.

For the foregoing reasons, and for the reasons stated in his original motion, Mr. Kuhl respectfully renews his request that this Court appoint substitute appellate counsel or, in the alternative, grant him leave to proceed pro se. At minimum, Mr. Kuhl requests that the Court direct that the factual and procedural history set forth above — regarding the Samsung data-seizure issue, the omitted Kroschel affidavit facts and denial of a Franks hearing, the Section F general-warrant defect, the lawfulness of Mr. Kuhl's arrest, the Count 1 verdict-form unanimity issue, and the additional instance of prosecutorial misconduct described above — be confirmed against the district court record and incorporated into any brief filed on his behalf.

Respectfully submitted,

Samuel Alexander Kuhl

Samuel Alexander Kuhl

Defendant-Appellant, Pro Se

Dated: July 29, 2026

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2026, a copy of the foregoing was served on Olivia Ghiselli, Assistant United States Attorney, counsel for Plaintiff-Appellee, at 330 Ionia Ave. NW, Suite 501, Grand Rapids, MI 49503, by regular U.S. mail, in accordance with the Federal Rules of Appellate Procedure.

Samuel Alexander Kuhl

Samuel Alexander Kuhl

This envelope is for use with the following services: UPS Next Day Air®
UPS Worldwide Express℠
UPS 2nd Day Air®

Visit theupsstc

**Domestic Shipments**

- To qualify for the Lett... correspondence, urgen... weigh 8 oz. or less. UPS... those listed or weighing n...

**International Shipments**

- The UPS Express Envelope may ... documents of no commercial value. Certain countries conside... media as documents. Visit ups.com/importexport to verify i... your shipment is classified as a document.

- To qualify for the Letter rate, the UPS Express Envelope must weigh 8 oz. or less. UPS Express Envelopes weighing more than 8 oz. will be billed by weight.

Note: Express Envelopes are not recommended for shipments of electronic media containing sensitive personal information or breakable items. Do not send cash or cash equivalent.

P:RED
UCON - 2660
S:MR
2987
1Z81910A03583 5
1:300
CINCINNATI OH 45202
100 E 5TH ST
UNITED STATES COURT OF APPEALS

K-RAY

Apply shipping documents on this side.

Do not use this envelope for:

**UPS Ground®**
**UPS Standard®**
**UPS 3 Day Select®**
**UPS Worldwide Expedited®**

Visit **theupsstore.com** to learn more about our Print & Business Services.

THOMAS BENJAMIN KUHL
(269) 350-5103
THE UPS STORE #4830
SUITE D
5455 GULL ROAD
KALAMAZOO MI 49048-7654

1 LBS 1 OF 1
SHP WT: 1 LBS
DATE: 29 JUL 2026

SHIP TO:
SIXTH CIRCUIT
UNITED STATES COURT OF APPEALS
100 E 5TH ST

CINCINNATI OH 45202-3901

OH 452 9-04

UPS GROUND
TRACKING #: 1Z 819 10A 03 5835 2987

BILLING: P/P

REF #1: BA

RECEIVED
JUL 30 2026
KELLY L. STEPHENS, Clerk

The UPS Store Smart Label
Tracking #
1Z81910A035835 2987

% Recycled fiber
Post-Consumer

Serving you for more than 100 years